ELIZABETH TOWER *vs*. ANN M. HIRSCHHORN.

Hampden. December 2, 1985. — May 15, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Privileged Communication. Privacy. Doctor,* Privileged communication. *Damages,* Breach of privileged communication, Privacy, Remittitur. *Error,* Harmless. *Practice, Civil,* Judgment notwithstanding verdict, Directed verdict, Special questions to jury. *Consumer Protection Act,* Availability of remedy, Damages.

A plaintiff who was being treated by a neurologist while she had an action pending to recover for injuries sustained in an automobile accident was not entitled in a subsequent action against the neurologist to recover on a count for breach of the confidentiality of the physician-patient relationship as a result of the neurologist's discussions with an attorney for the insurance company in the automobile tort action and a medical expert for the defendant in that case, where in the action against the neurologist the jury specifically found in answers to special questions that the neurologist's discussions did not prejudice the plaintiff's presentation of her case in the motor vehicle tort action. [584-585]

In an action against a neurologist who had treated the plaintiff after an automobile accident, there was sufficient evidence from which the jury could conclude that the neurologist's discussion, in connection with an earlier motor vehicle tort case brought by the plaintiff, with the attorney for the insurance company or a medical expert for the defense amounted to an actionable invasion of privacy under G. L. c. 214, § 1B. [585-588]

On appeal from the judge's allowance of the defendant's motion for judgment notwithstanding the verdict with regard to several of the special verdicts returned by the jury in a civil action, this court, reversing in part, held that on remand the trial judge should consider whether the jury's award of damages in the amount of $18,000 was excessive, even though the validity of the award was not expressly appealed. [589]

A plaintiff who was being treated by a neurologist while she had an action pending to recover for injuries sustained in an automobile accident was not entitled to recover against the neurologist under the Consumer Protection Act based on the neurologist's failure to assist the plaintiff in her motor vehicle tort action and the neurologist's cooperation with the defense in that action, where at the relevant time recovery under the act required a loss of money or property, and where in the plaintiff's

action against the neurologist the jury had found that the plaintiff was not prejudiced in her motor vehicle case by the acts of the neurologist. [589-590]

In an action against a neurologist who had treated the plaintiff after an automobile accident, the judge did not abuse his discretion in denying the plaintiff's request that in a special question submitted to the jury the judge substitute the term "psychomotor seizure disorder" for the term "psychomotor seizures," where both expressions had been used during the trial more or less interchangeably. [590-591]

HENNESSEY, C.J., concurring, expressed views respecting the award of damages in the case. [592]

CIVIL ACTIONS commenced in the Superior Court Department on May 10, 1978, and April 24, 1979, respectively.

Motions to dismiss were heard by *Raymond R. Cross,* J., and the cases were tried before *John F. Moriarty,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Louis Kerlinsky* for the plaintiff.

*Jeffrey L. McCormick* for the defendant.

LIACOS, J. The plaintiff, Elizabeth Tower, brought two suits against the defendant, Ann M. Hirschhorn, a neurologist who previously had treated the plaintiff. In essentially overlapping complaints, the plaintiff set forth five causes of action: breach of a confidential relationship; invasion of privacy; unfair and deceptive acts in violation of G. L. c. 93A; negligent testimony; and negligent diagnosis. The cases were consolidated for trial,[1] and the defendant moved to dismiss all counts for failure to state a claim on which relief may be granted. See Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The motion judge dismissed those counts alleging either a breach of confidentiality or an invasion of privacy, leaving the other three causes of action for trial. The trial judge, anticipating an appeal of the motion judge's ruling, permitted evidence to be introduced on the dismissed causes of action, as well as on those that had survived the motion to dismiss, hoping thereby to alleviate the necessity of a new trial if the motion judge's rulings should be reversed on appeal.

---

[1] No explanation is given as to why two complaints were filed.

The case was submitted to the jury for answers to twenty-five special questions. Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). In response to the jury's answers to the special questions, the plaintiff moved for a new trial on a number of the special verdicts. The plaintiff also moved for assessment of treble damages and reasonable attorney's fees and interest for the count brought under G. L. c. 93A (1984 ed.). The defendant moved for judgment notwithstanding the verdict with regard to several of the special verdicts returned. The trial judge, in a memorandum and order, denied both of the plaintiff's motions, granted the defendant's motion, and entered judgment on all counts for the defendant. The Appeals Court affirmed by an order of summary disposition. *Tower* v. *Hirschhorn,* 19 Mass. App. Ct. 1102 (1984). We granted the plaintiff's application for further appellate review. We affirm in part and reverse in part.

The factual background of the case is as follows. In 1970 the plaintiff was riding as a passenger in an automobile driven by Harold Mandeville when the automobile struck a tree. The plaintiff was rendered unconscious. In the ensuing years, she experienced repeated fainting spells and headaches. Eventually, she was unable to continue her employment and, in March, 1974, sought treatment from the defendant.

During the period of treatment, a suit brought by the plaintiff against Mandeville was pending. The plaintiff hoped to prove that, as a result of the automobile accident, she suffered from psychomotor seizures.[2] In May, 1975, prior to the start of the Mandeville trial, the defendant terminated her physician-patient relationship with the plaintiff. The plaintiff's attorney later obtained a report from the defendant concerning her treatment of the plaintiff. The plaintiff's counsel decided not to call the defendant as an expert witness in the Mandeville trial, but the defendant was subpoenaed by Mandeville's attorney, Mr. Eugene J. Mulcahy, as a defense witness. The defendant testified that she was unable to say with reasonable medical certainty that the plaintiff suffered from psychomotor seizures, or

---

[2] Psychomotor seizures apparently are a symptom of epilepsy.

that, if the plaintiff so suffered, the seizures were causally related to the automobile accident. The jury in the Mandeville trial returned a verdict in the plaintiff's favor for $9,000.

The plaintiff apparently attributed her perceived lack of adequate compensation to the defendant's testimony and subsequently brought the suit which is now before us on appeal. She alleged that, without her consent, the defendant had discussed the plaintiff's medical treatment with Mr. Mulcahy and Dr. Samuel J. Brendler, a neurologist retained by Mandeville's insurer to examine the plaintiff in preparation for the Mandeville trial. The plaintiff asserted that, by engaging in these discussions, the defendant violated her duty of confidentiality to the plaintiff and invaded the plaintiff's privacy. The plaintiff alleged also that the defendant's testimony at the Mandeville trial was contrary to the defendant's earlier statements to the plaintiff indicating that the defendant believed the plaintiff to be suffering from psychomotor seizures caused probably by the automobile accident. This last factual allegation gave rise to the plaintiff's claims of negligent testimony and negligent diagnosis, as well as her claim under G. L. c. 93A.

On appeal, the plaintiff argues that the trial judge erred in granting the defendant's motion for judgment notwithstanding the verdict, in concluding that the plaintiff could not recover under G. L. c. 93A, and in the wording of the first special verdict question.

1. *Allowance of motion for judgment notwithstanding the verdict.* a. *Breach of confidentiality.* In response to special questions, the jury found that the defendant had discussed "the plaintiff's condition or her treatment or diagnosis of that condition with the attorney for Harold Mandeville's insurance company [Mr. Mulcahy] or with Dr. Samuel Brendler before she testified at the trial of the plaintiff's case against Harold Mandeville." The judge granted judgment notwithstanding the verdict, stating that he was bound by the ruling of the motion judge, dismissing the breach of confidentiality cause of action.[3]

---

[3] It is questionable whether the trial judge was precluded from reviewing the rulings of the motion judge, see *Peterson* v. *Hopson,* 306 Mass. 597, 602-603 (1940). See also *Commonwealth* v. *Moore,* 20 Mass. App. Ct. 1, 3

That dismissal was predicated on the motion judge's conclusion that Massachusetts does not recognize or protect any confidential relationship between physician and patient.

After this case was tried, we held that "a duty of confidentiality arises from the physician-patient relationship and that a violation of that duty, resulting in damages, gives rise to a cause of action sounding in tort against the physician." *Alberts* v. *Devine*, 395 Mass. 59, 69 (1985). Even if *Alberts* is given retroactive application, an issue we need not address, the plaintiff's claim for breach of confidentiality ultimately fails. The plaintiff claimed that the defendant's discussions with Mr. Mulcahy and Dr. Brendler deprived her of an opportunity for an adequate settlement of the Mandeville claim and resulted in a reduced jury verdict. The jury found specifically, however, that these discussions did not prejudice the plaintiff's presentation of her action against Mandeville, and that she did not recover less than fair and reasonable compensation for her personal injuries. Thus, the plaintiff failed to prove to the jury's satisfaction that she had sustained any damage as a result of the defendant's actions, regardless whether those actions constituted a breach of confidentiality. Any error on the judge's part in granting judgment notwithstanding the verdict as to this cause of action was therefore harmless.

b. *Invasion of privacy*. General Laws c. 214, § 1B (1984 ed.), states: "A person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages."[4] The jury in the instant case found that the defendant's discussions with Mr. Mulcahy or Dr. Brendler constituted, in the words of

n.4 (1985). We think, however, that, since the case was going to trial on related counts, the decision of the trial judge to submit all the counts to the jury, to avoid a possible second trial, was warranted and wise. See *Smith* v. *Ariens Co.*, 375 Mass. 620, 627-628 (1978).

[4] Neither party addresses the issue whether the statutory phrase "in equity" precludes a jury's consideration of a claim based solely on G. L. c. 214, § 1B. We have declined to determine whether there is a comparable nonstatutory claim in tort for invasion of privacy. *Alberts* v. *Devine*, 395 Mass. 59, 70 (1985).

the statute, an "unreasonable, substantial or serious interference" with the plaintiff's privacy and awarded $18,000 as reasonable compensation. The judge granted the defendant's motion for judgment notwithstanding the verdict, however, due to the motion judge's previous ruling dismissing those counts of the plaintiff's complaints which alleged an invasion of privacy.

In dismissing the plaintiff's cause of action for invasion of privacy, the motion judge reasoned that: (1) G. L. c. 214, § 1B, covers breach of confidentiality, but no protected confidential relationship existed between the plaintiff and the defendant; (2) in the absence of a breach of trust, contract, or confidential relationship, public disclosure of private facts requires publication to the public at large, not merely to a few people, as in the instant case; and (3) the matter made public must be one that would be offensive and objectionable to a reasonable person of ordinary sensibilities, whereas the information divulged about the plaintiff is not of this type.[5] The motion judge's ruling was predicated on several erroneous conclusions of law.

In *Bratt* v. *International Business Machs. Corp.*, 392 Mass. 508, 522 (1984), a decision predating *Alberts,* this court recognized "a patient's valid interest in preserving the confidentiality of medical facts relayed to a physician." *Bratt* established that disclosure of such facts can give rise to a cause of action under G. L. c. 214, § 1B, for invasion of privacy. Furthermore, we concluded that the success of such a cause of action is not dependent on communication of the personal matters disclosed to the public at large. *Id.* at 519 & n.15.

Under the principle articulated in *Bratt,* disclosure without the consent of the patient, of confidential medical information to two individuals, as alleged by the plaintiff, would be suffi-

---

[5] The plaintiff did not refer expressly to G. L. c. 214, § 1B, in either of her complaints. The motion judge assumed, however, that those counts alleging an invasion of privacy were brought under the statute. After the motion judge's ruling, the plaintiff sought to amend her complaints, referring specifically to G. L. c. 214, § 1B. The motion to amend was denied; the judge concluded that the amended complaints stated substantially the same causes of action as already had been dismissed.

cient to warrant a finding of invasion of privacy. The defendant argues, however, that, although the plaintiff introduced evidence indicating that the defendant had engaged in separate conversations with Mr. Mulcahy and Dr. Brendler, such evidence was insufficient to sustain a jury finding that the defendant had discussed any substantive aspects of her treatment of the plaintiff with either of those individuals. We disagree.

In passing on the judge's allowance of the defendant's motion for judgment notwithstanding the verdict, we must view the evidence in the light most favorable to the plaintiff. See *Cort v. Bristol-Myers Co.*, 385 Mass. 300, 301 (1982). The plaintiff testified that, during the Mandeville trial, she saw the defendant speaking with Mr. Mulcahy just before the defendant was to testify.[6] The plaintiff sought to have the jury draw the inference that the defendant and Mr. Mulcahy had been discussing the defendant's diagnosis and treatment of the plaintiff. In their own testimony, the defendant and Mr. Mulcahy disclaimed any memory of the exact content of this conversation, although the defendant denied that she had discussed her medical treatment of the plaintiff.[7] The jury were free to disbelieve the defendant's testimony, however, and reasonably might have reached a contrary conclusion.

The plaintiff also introduced a transcript of Dr. Brendler's testimony at the Mandeville trial in which the physician acknowledged that he had consulted with the defendant, and that part of his opinion relative to his diagnosis of the plaintiff's neurological problems was based on those consultations. This evidence clearly was sufficient to support the jury's finding that the defendant had discussed the plaintiff's condition or her treatment or diagnosis of that condition with Dr. Brendler.[8]

---

[6] Evidence was introduced indicating that the defendant also had a one-half hour telephone conversation with Mr. Mulcahy some time before their courthouse consultation.

[7] As to the telephone conversation between Mr. Mulcahy and the defendant, Mr. Mulcahy testified that he had a clear recollection of the discussion, and that the defendant's medical treatment of the plaintiff was not mentioned.

[8] It is not clear from the way the special question is phrased whether the jury determined that the defendant had spoken to both Mr. Mulcahy and Dr.

We conclude that the jury were warranted in finding that the defendant divulged confidential medical information without the plaintiff's consent to either Mr. Mulcahy or Dr. Brendler; or both. The jury also were warranted in finding that her actions in doing so constituted an unreasonable, substantial or serious interference with the plaintiff's privacy.[9] The judge therefore erred in granting judgment notwithstanding the verdict as to the plaintiff's invasion of privacy cause of action.[10]

Brendler regarding the plaintiff's medical condition, or just one of them, and, if the latter, which one. The evidence supports a finding that the defendant had discussions with both men as to her treatment of the plaintiff.

[9] In *Bratt* we stated that G. L. c. 214, § 1B, proscribes only "unreasonable" interferences with a person's privacy, so that certain countervailing interests "may render the disclosure of personal information reasonable and not actionable under the statute." *Bratt* v. *International Business Machs. Corp., supra* at 520. We went on to articulate a balancing test applicable on the facts of *Bratt* for determining whether a physician's disclosure to an employer of personal medical data about an employee is unreasonable under the statute. The defendant in the case at bar has not argued that any disclosures she might have made to Mr. Mulcahy or Dr. Brendler were reasonable under the circumstances. We, therefore, need not consider whether, or to what extent, the plaintiff may have waived her statutory right of privacy by commencing her motor vehicle tort action against Mandeville. We note, however, that Massachusetts does not recognize a physician-patient testimonial privilege. Thus, in *Alberts* we stated that, notwithstanding a physician's duty of confidentiality, societal interests may require that he testify in court about information obtained from a patient in the course of treatment. *Alberts* v. *Devine, supra* at 67. See *Hammonds* v. *Aetna Casualty & Sur. Co.*, 243 F. Supp. 793, 805 (N.D. Ohio 1965) (although patient's institution of personal injury suit may lead ultimately to waiver of his right to confidentiality, and such right will not prevent pretrial discovery of confidential information as to which physician might testify at trial, clandestine conference between physician and attorney for patient's adversary is not permissible). See also *State ex rel. Klieger*, 125 Wis. 2d 468, 473-474 (1985); *Alexander* v. *Knight*, 25 Pa. D. & C. 2d 649, 655 (1962), affirmed, 197 Pa. Super. 79 (1962).

[10] We recognize that it is commonplace in the medical profession for physicians to consult with their colleagues regarding the treatment and diagnosis of patients within their care. This exchange of information is desirable, as it generally improves the medical care rendered. The dialogue between the defendant and Dr. Brendler was different in kind, however. Dr. Brendler had been retained by Mandeville's insurer, and thus stood in an antagonistic relationship to the plaintiff. Additionally, the facts in this case do not involve another common practice whereby, with the knowledge and consent of the parties, the medical experts of a plaintiff and a defendant may discuss the plaintiff's condition, with a view toward settlement of a claim.

2. *Damages.* We turn now to consideration of the $18,000 award of damages. The defendant has not argued before us that the $18,000 award is excessive as matter of law. She did argue this point in her motion for a new trial. The judge denied the defendant's motion in light of his ruling on the motion for judgment notwithstanding the verdict. Although the validity of the $18,000 award is not before us, we believe that the defendant is entitled to have her claim of error as to excessive damages ruled on by the trial judge on remand, in accordance with the provisions of Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974). Thus, if the judge determines, after reviewing the evidence, that the award was excessive, under rule 59 (a) he must give the plaintiff an opportunity to remit that portion of the $18,000 award which exceeds the amount adjudged to be a fair recovery. If the plaintiff refuses to accede to the remittitur, the defendant then should be granted a new trial on the damages issue.[11]

3. *General Laws c. 93A claim.* Subsequent to the return of the jury's verdict, the plaintiff moved for assessment of treble damages and reasonable attorney's fees and interest under G. L. c. 93A. She asserted that the defendant's failure to assist in the preparation and presentation of the case against Mandeville, as well as the defendant's discussions regarding the plaintiff's condition with Mr. Mulcahy and Dr. Brendler, and the defendant's refusal to discuss the plaintiff's condition with the plaintiff's attorney, were unfair or deceptive acts in violation of G. L. c. 93A. The judge denied the motion, reasoning that the acts complained of did not rise "to the degree of rascality necessary to constitute unfairness within the meaning of [G. L.] c. 93A," at least in view of the jury's finding that the acts were not committed with the intention of prejudicing the plaintiff's claim against Mandeville. The judge further

[11] The defendant shall have thirty days from entry of rescript to seek a hearing on the issue whether the $18,000 verdict is excessive and to seek a new trial on damages only. Should the defendant fail to do so, or should the judge deny a new trial on damages, judgment shall enter for the plaintiff on the invasion of privacy count in the amount of $18,000, together with interest.

stated that, at the time the acts were committed, recovery under G. L. c. 93A required a loss of money or property by the plaintiff. See *Baldassari* v. *Public Fin. Trust,* 369 Mass. 33, 44-46 (1975). He noted that the acts about which the plaintiff complained did not prejudice her case against Mandeville, and that she sustained no monetary damages as a result.

We need not decide whether the judge correctly determined that the defendant's acts were neither unfair nor deceptive, as those terms are defined by G. L. c. 93A, for we sustain his decision on the alternative ground stated. We find no merit in the plaintiff's argument that the evidence presented required a finding that the plaintiff did, in fact, suffer a loss of money as a result of the defendant's actions. The plaintiff's motion was properly denied.

4. *Wording of the first special verdict question.* The first special verdict question submitted to the jury read as follows: "Did the plaintiff, Elizabeth Recor Tower, suffer from psychomotor seizures in September 1975 [the month in which the Mandeville trial began]?" The plaintiff contends that the judge erred in so framing this question. Focusing on the distinction between a psychomotor seizure disorder and the seizures themselves, she maintains that there was abundant evidence presented to support a finding that the plaintiff was afflicted with a psychomotor seizure disorder at the time of the Mandeville trial, but that she never claimed to have experienced actual seizures in September, 1975. Accordingly, in her view a literal reading of the question demanded a negative response by the jury, thereby withdrawing from the jury's consideration several of the causes of action asserted.

During a lobby conference prior to submission of the special questions to the jury, the plaintiff's counsel expressed his preference to the judge that the first question refer to the plaintiff's suffering from a seizure disorder rather than from psychomotor seizures, explaining that the latter term meant the actual epileptic fits. The judge declined to reword the question, stating that the jury could better understand the question if left as originally phrased, and that he did not think the jury would focus on whether the seizures were a symptom of

the disease or the disease itself, because the phrase "psychomotor seizures" had been used throughout the trial.

"The nature, scope, and form of special questions submitted to a jury pursuant to Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974), are matters within the discretion of the trial judge." *Everett* v. *Bucky Warren, Inc.,* 376 Mass. 280, 291 (1978). His determination that the question as posed was not likely to mislead the jury is entitled to deference by this court. Although we might have been inclined to phrase the question differently, we will not substitute our judgment for that of the trial judge unless the denial of the requested instruction was clearly errone- ous. In this instance it was not.

In testifying at trial the defendant used the terms "psycho- motor seizures" and "psychomotor seizure disorders" some- what indiscriminately.[12] The plaintiff, however, used the first term almost exclusively in describing her medical condition subsequent to the automobile accident and the defendant's diag- noses as to that condition. She testified that after tests were performed during her hospitalization in March, 1974, the de- fendant told her that she "had probable psychomotor seizures," that she was hospitalized in October, 1974, for "probable sei- zures" and was again told by the defendant that she "had psychomotor seizures," and that during 1975 she kept having "seizures." In light of such testimony we think that the judge was acting within his discretion in denying the plaintiff's re- quest that the first special verdict question use the terminology "psychomotor seizure disorder."[13]

---

[12] For example, in several hospital records introduced at trial the defendant made reference to the possibility that the plaintiff was suffering from a "psychomotor seizure disorder," while in others she stated that the plaintiff experienced probable "psychomotor seizures."

[13] The plaintiff argues also that she suffered from posttraumatic headaches, in addition to a psychomotor seizure disorder, as a result of her automobile accident, and that she was so diagnosed by the defendant. She requested that the judge refer to posttraumatic headaches in his special questions to the jury and alleges that the judge erred in denying that request.

The judge was of the view that the crux of the plaintiff's case was whether the defendant improperly diagnosed the plaintiff as suffering from psychomotor seizures. We agree. For example, while both of the plaintiff's complaints allege that the defendant told the plaintiff that the latter "probably

5. *Conclusion.* In conclusion, we affirm so much of the judge's order as entered judgment in favor of the defendant on those counts alleging a violation of G. L. c. 93A, negligent testimony, and negligent diagnosis. We affirm, as well, that portion of the judge's order granting judgment notwithstanding the verdict as to the verdicts relating to the plaintiff's breach of confidentiality cause of action. We reverse the judge's order insofar as it granted judgment notwithstanding the verdict on the verdicts relating to the plaintiff's invasion of privacy cause of action. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

HENNESSEY, C.J. (concurring). I concur in the court's result and reasoning, including the remand to the trial judge for consideration of the issue of excessive damages. As to that issue, I would add that the judge's review of the record may show that he is required to reduce the verdict to a nominal sum. Punitive damages are not permissible as to this cause of action, and I think that no compensatory damages have been shown, in light of the jury's conclusion that the doctor's discussions did not adversely affect the jury's verdict in the personal injury case.

---

had brain injury and epileptic seizures" neither refers to any diagnosis regarding posttraumatic headaches. Furthermore, review of that portion of the defendant's testimony from the Mandeville trial, upon which much of the present action is predicated, reveals that the defendant did not discuss her medical opinion concerning the plaintiff's recurring headaches. Rather, she testified that she was unable to state, with a reasonable degree of medical certainty, whether the plaintiff was suffering from psychomotor seizures. In our view, the evidence presented did not raise an issue as to the defendant's diagnosis of posttraumatic headaches, and the plaintiff's request was properly denied.