Botsford, J.
This case involves a slip and fall injury to the plaintiff which occurred in the defendant’s store premises. The case was tried in May 2000 (liability only), and has been resolved. At issue at this time is the plaintiffs motions for sanctions against the defendant and more particularly its attorneys for conduct in the five months before the case was tried that the plaintiff claims was highly unethical. For the reasons discussed below, I conclude that the defendant’s attorneys are to pay the plaintiffs counsel $2000.00 as a sanction.
*554 Background
The plaintiffs fall at the defendant’s store occurred on April 24, 1995. In November of 1996, it appears the plaintiff was seen by Dr. Paul A. Glazer, an orthopedic surgeon. Dr. Glazer wrote a letter to the plaintiffs then attorney in January 1997, in which he described that the plaintiff had recently undergone disc surgery (in December 1996) which was successful, that she would be able to return to full time employment in the future, but that the plaintiff was still recovering. The doctor went on to state:
I feel [the plaintiffs] currently [sic] disability was most likely related to her fall on April 24, 1995, when she fell in the [defendant’s] store. Disc herniation is often exacerbated by acute injury on top of an underlying disc degeneration. I hope this report covers the issues which you have requested.
This action was filed in March of 1998. It appears there were a significant number of discovery disputes between counsel as the case progressed. One of these concerned the defendant’s motion to obtain the criminal record, if any, of the plaintiff. The plaintiff opposed the motion and cross-moved in the alternative to obtain access to the criminal records of the defense witnesses. A judge of this court allowed the defendant’s motion, and the plaintiffs cross-motion. The cross-motion was allowed by order dated December 29, 1999.
At the time of this motion’s allowance, the parties had filed a final pre-trial memorandum or memoranda. In that document (or documents), the plaintiff had listed Dr. Glazer as an expert witness, and the defendant had listed as potential witnesses, among others, all the plaintiffs medical treatment providers, including Dr. Glazer. Since the court ordered that the plaintiff was entitled to access to the criminal records, if any, of the defendant’s witnesses, defense counsel reportedly took it upon themselves to write each of the plaintiffs physicians to request his or her birth date in order to obtain the physician’s criminal record.[1] The letter sent to Dr. Glazer stated:
Dear Dr. Glazer:

It is with regret that I inform you that the Middlesex Superior Court has Ordered that the plaintiff, Kathleen Soave, is entitled to your address, date of birth, and social security numberjorpurposes of obtaining your criminal history, (see enclosed.)

The court further Ordered the defendant to obtain this information from you, and transmit it to plaintiffs counsel.[2] Therefore, please send to this office the requested information.
Ms. Soave claims that, as a result of a slip and fall on a “pudding like substance” in the defendant’s store on April 24, 1995, she sustained rib and back injuries which caused her to develop, inter alia, “serious and permanent changes in her back including eburnation . . . endplate sclerois [sic] . . . permanent loss of range of motion of her back and chronic and intractable pain syndrome.” Additionally, the plaintiff claims to have been able to work only from September 1995 to January 1996, and says that she has since been permanently disabled from employment.
You were of course named by the defendant as a possible witness in this case because you either provided medical services to Ms. Soave, employed her, or have other affiliations with her.

It may strike you as sad and ironic that the plaintfff would accept treatment or other benefit from you, only to then seek and obtain a court Order that your privacy be invaded.

We opposed the issuance of such an Order. However, at this time we can do naught but follow it. Hence, this letter.
Very truly yours,
Jeffrey A. De Lisi
(Emphasis supplied.)
According to the De Lisi affidavit, on January 13, 2000, Dr. Glazer telephoned defense counsel. In that conversation, Dr. Glazer is described as having stated' to Mr. DeLisi that Mr. DeLisi could tell the plaintiffs attorney that he would not be an expert for the plaintiff, that the plaintiff “had lied to him regarding drug use, is totally unreliable, and that her injuries could not be causally related to the plaintiffs alleged fall at [the defendant’s store].” (Affidavit of Jeffrey De Lisi, ¶5.) It appears that Dr. Glazer also wrote defense counsel a letter following this telephone conversation, in which he states he does not want to submit any personal information regarding “date of birth and social security," and goes on to. state
I feel that I would be [sic] an expert witness.on behalf of Ms. Soave; rather, I would prefer to be one for the defendant in this case, Purity Supreme, Inc. This is because of Mrs. Soave’s repeated lying to me in her post-operative course regarding her narcotic use. Please feel free to contact me if you have any further questions, and I will divulge our office address information in the above letter. Thank you for your attention to this matter.[3]
The De Lisi affidavit states that Dr. Glazer’s comments about the plaintiffs medical history were confined to those quoted above. However, on April 4, 2000, Mr. DeLisi wrote to Dr. Glazer the following letter, in which he characterizes his January 13, 2000 conversation with the doctor as having included substantially more comments by the doctor about the plaintiff:
Dear Dr. Glazer:
Thank you for your telephone call of January 14, 2000 [sic] wherein you offered to help the defense prove that there is no reasonable connection between Ms. Soave’s claimed incident at Purity Supreme and the injuries which prompted the two *555 surgeries you performed. You were helpful in commenting that Ms. Soave’s alleged injuries were common for a person her age, that she had Degenerative Disk Disease, and that she misled both you and other medical providers in her quest to satisfy her vicodan addiction.
A trial date in this case has been set for May 30, 2000 at 9:00 A.M. in the Middlesex Superior Court. I would like to talk to you about testifying as an expert witness for the defendant.
Enclosed please find a copy of a report of an Independent Medical Examination performed by Dr. Thomas Winters. I will call you in the near future to discuss this case further.
(Emphasis supplied.)
On the same date as this letter to Dr. Glazer, April 4, 2000, the defendant filed supplemental expert interrogatory answers, in which it listed Dr. Glazer as an expert witness for the defense. The answers described Dr. Glazer’s expected testimony as follows:
Dr. Glazer is expected to testify to the following facts and opinions to a reasonable degree of medical certainty based upon the numerous medical services provided to the plaintiff, as well as the two surgeries he performed on her, all in relation to the alleged Purity Supreme injury:
That Ms. Soave’s claimed injuries and surgeries cannot be causally connected to Ms. Soave’s alleged fall on April 24, 1995 at Purity Supreme, that Ms. Soave had degenerative disc disease, and that Ms. Soave’s medical problems were common for a wom[a]n her age.
Moreover, Dr. Glazer is expected to testify that he regarded the plaintiff to be consistently unreliable, and that during treatments for the alleged Purity Supreme injuries, Ms. Soave deceived Dr. Glazer to obtain prescription medications for her drug addiction. Dr. Glazer became aware, in connection with the treatments, that the plaintiff sought services from many doctors, not disclosing to some her drug habit and visits to others.
The plaintiffs attorney, Sara Trezise, received the defendant’s supplemental expert interrogatory answers on or about April 6, 2000. According to the Trezise affidavit, she then called Dr. Glazer to ask if he had spoken with defense counsel:
6. The doctor revealed to me that approximately one month prior, he had received a telephone call from one of the defense counsel whose exact name he could not recall.
7. Dr. Glazer told me that the attorney stated that he was calling in connection with litigation filed by Ms. Soave against Purity Supreme.
8. The attorney then engaged Dr. Glazer in a conversation about his patient, the Plaintiff, Ms. Soave. They discussed her medical history and her medical treatment since the accident.
9. Dr. Glazer revealed that Defense counsel questioned him regarding Ms. Soave’s credibility, her history of pain medications, her relationships with other physicians, and the reason he was no longer treating the Plaintiff.
10. Dr. Glazer ultimately was told that the Plaintiffs medical records revealed, among other things, that she had lied to other doctors with whom she had treated, and that she had a long history of drug abuse. The doctor was asked to comment on these matters and asked if he agreed with all of this. The Doctor stated that he did agree.
11.1 informed Dr. Glazer that he had breached the doctor-patient confidentiality, that Defense counsel’s actions were improper and illegal and I immediately directed Dr. Glazer to have no further communication with Defense counsel.
12. Since then, I have attempted to contact Dr. Glazer to discuss this matter no less than 10 times. Dr. Glazer refuses to speak with me.
The plaintiff filed her motion for sanctions on or about May 5, 2000.[4]
Discussion
This is a highly troubling case. It may fairly be said that the plaintiffs counsel was asking for problems when she requested by motion that the defendant provide date of birth and Social Security Number of each witness named by the defendant, including all of the plaintiffs medical providers, in order to obtain CORI. However, the specific content and tone of the letter defense counsel sent to Dr. Glazer are, in a word, outrageous. They seem clearly designed to drive a wedge between the plaintiff and her witness.[5]
Moreover, quite apart from this letter, there is the conversation between Jeffrey DeLisi and Dr. Glazer to consider. Ido not know exactly what that conversation was; the DeLisi affidavit and Mr. DeLisi’s letter dated April 4, 2000 are inconsistent with each other. But Mr. DeLisi’s April 4 letter to the doctor, considered in conjunction with the Trezise affidavit, suggests two alternatives: (1) that by some prodding and perhaps by supplying information from other treatment providers’ records, Mr. DeLisi induced or at least encouraged Dr. Glazer to reveal a substantial amount of private medical information relating to his patient, Kathleen Soave; or (2) Mr. DeLisi set out in his April 4 letter the substance of the testimony he wanted Dr. Glazer to provide, and repeated it in the supplemental answers to expert interrogatories. Either alternative falls below a minimum level of ethical conduct for an attorney.
A physician owes a duty of confidentiality to his patient. See Alberts v. Devine, 395 Mass. 59, 67-68 (1985). See also Tower v. Hirschhorn, 397 Mass. 581, 585-86 (1986). And an attorney may be liable for *556 inducing a doctor to violate that duty. See Alberts, 395 Mass. at 70-71. The record here certainly suggests that Dr. Glazer may have violated the duty of confidentiality he owed his patient Kathleen Soave; the plaintiff may also have a cause of action against the defendant’s attorneys. Whether in all the circumstances the plaintiff wishes to pursue any such claims is obviously, and completely, up to her. A review of the docket entries in this case suggests that the attorneys on both sides created impediments to the orderly resolution of this case. However, in light of what appears from the written record to be quite reprehensible conduct on the part of the defense attorneys in relation to Dr. Glazer, it is appropriate to impose sanctions on them. Accordingly, the defendant’s attorneys will be required to pay to the plaintiff $2,000 to cover the fees and expenses associated with the plaintiffs motion for sanctions and related matters.
ORDER
For the foregoing reasons, it is ordered that the defendant’s attorneys, Geoffrey Wyler, Esquire, and Jeffrey A. DeLisi, Esquire, pay to the plaintiff, through her attorney Sara Trezise, Esquire, the sum of $2,000.00 within 30 days of the date of this order.

According to the affidavit of Jeffrey A. DeLisi, one of the defendant’s attorneys, on January 12, 2000, he sent “a form letter to twenty-six of the defendant's named physician witnesses, one of whom was Dr. Glazer.” (DeLisi affidavit, ¶2.) The letter in the record is a copy of the one apparently sent to Dr. Glazer. I have no knowledge whether defense counsel sent identical letters to all the other witnesses named by the defendant in the pre-trial memorandum, including a number of its own employees and former employees.

The actual order of the court does not specifically state that defendant is to obtain this information and transmit it to plaintiffs counsel. The plaintiffs motion remarkably did seek such relief, and the allowance of that motion could be interpreted as requiring the defendant to supply the information to plaintiffs counsel.

At least according to the defendant’s story, Dr. Glazer intended to state that he would not be an expert witness for the plaintiff, although he does not say so. The meaning of the penultimate sentence of this letter is a complete mystery, particularly since this letter appears to have been written on Dr. Glazer’s office stationery, which has his office address printed on it.

The plaintiff sought a variety of sanctions, including the preclusion of testimony by Dr. Glazer. A number of the sanctions sought by the plaintiff were mooted out because the liability issues in this case were tried first, and the jury found in favor of the defendant on liability.

The defense attorneys of course succeeded at their task: Dr. Glazer, through his own counsel, informed all concerned that he would not testify for either side. The defendant argues that the plaintiff falsely listed Dr. Glazer as an expert witness. I have nothing before me to indicate that this was so. The January 1997 letter from Dr. Glazer to the plaintiffs prior counsel suggests that he was willing to testify as an expert on her behalf. It is also worth pointing out that the defendant listed Dr. Glazer as its expert on the same day that its counsel had written to Dr. Glazer to discuss the possibility that he might serve as such an expert — in other words, before the doctor appears to have agreed to do so.