Nickerson, Gary A., J.
The plaintiff, Josephine Bevilacqua (“Bevilacqua”) filed suit against Richard F. Eisen (“Dr. Eisen”) and Thermage, Inc. (“Thermage”) (collectively “the Defendants”), seeking damages under various theories for the disclosure and publication of photographs taken during her medical treatment. This matter is before the court on the Defendants’ motions for summary judgment. The court held a hearing on January 20, 2009. For the following reasons, the Defendants’ motions for summary judgment are ALLOWED in part and DENIED in part.
BACKGROUND
The following undisputed facts are taken from the summary judgment record, viewed in the light most favorable to Bevilacqua as the non-moving party. In February of 2004, Bevilacqua sought medical treatment from South Shore Skin Center (“SSSC”). On February 28, 2004, Bevilacqua signed a written con- • sent form allowing Dr. Eisen to perform ‘Thermage treatment” on her face. Bevilacqua believed her treatment to be a success.
During a prior visit on February 27, 2004, nurse Betsy Willner (“Nurse Willner”) presented Bevilacqua with a Photographic Dermatology Consent Form (“the SSSC Release”), which allowed SSSC to obtain photographs of her “for educational, medical, scientific, promotional, research, or other purposes.” In addition, the document provided, “I agree that the photographs and information relating to my case may be published or used for purposes which SSSC, in its sole discretion, deems proper. These uses may include, without limitation, lectures, professional journals, advertisements and brochures. However, I shall not be identified by name in any such publication or use. I understand that in some cases my facial features may be visible and/or recognizable.” The document also contained a release clause, by which Bevilacqua agreed to “release SSSC, its personnel and any other person participating in [her] care or dealing with the photographs from any and all liability which may or could arise from the taking or use of such photographs.”
Bevilacqua knew Nurse Willner through her treatment at SSSC with Dr. Eisen, as she had handled her preoperative procedure. While Bevilacqua stated that she did not feel comfortable with people seeing photographs from her treatment, Nurse Willner assured her that the photographs would only be displayed within SSSC. Nurse Willner also stated the photographs would be altered so Bevilacqua would be unrecognizable. After the conversation with Nurse Willner, Bevilacqua signed and executed the SSSC Release. Nurse Willner signed as a witness, and Dr. Eisen later signed as the photographer.
On August 11, 2004, Bevilacqua returned to SSSC for a microdermabrasion procedure performed by Dr. Eisen. At this time, Dr. Eisen asked Bevilacqua for permission to take pictures of her face, which would reflect Bevilacqua before and after her “Thermage treatment.” Bevilacqua verbally consented to Dr. Eisen’s request and Dr. Eisen took the photographs. During the same visit at SSSC, Nurse Willner presented Bevilacqua with an Authorization to Disclose Photographs and Release of Rights Form (“the Therm-age Release”). Bevilacqua stated she wanted to read the document, but her eye glasses were in her vehicle. Nurse Willner responded by telling Bevilacqua to trust her, and that the document was no big deal. Nurse Willner also covered a portion of the document with a folder. Nurse Willner further stated that the photographs would only be used inside Dr. Eisen’s office, and Bevilacqua would be disguised.[2] With the folder covering part of the language, Bevilacqua signed and executed the document.
The Thermage Release expressly authorized Dr. Eisen “to disclose to Thermage, Inc. all photographs taken of [the patient] in conjunction with treatment using the ThermaCool TC System.” Additionally, according to the “Scope of Release,” signing the document meant releasing “to Thermage, Inc. the right to these photographs,” and consenting “to the copyright, publication and use of such photographs by Therm-age, Inc.” In the scope of release section, an X was also checked off next to “Any and All Uses,” which included “advertising, publicity or promotion in any media.”'-'[3] Lastly, the document expressly released “Thermage, Inc., its successors, affiliates and assigns, from any claim, demand, cause of action or proceeding of whatever nature arising out of any use, publication and/or distribution of [the patient’s] photographs in accordance with the terms of this authorization.” Dr. Eisen also signed the Thermage Release to reflect his agreement to disclose the referenced photographs to The-rmage.
Thereafter, on or about January 3, 2005, Thermage published an advertisement in the National Enquirer that included before and after photographs taken during Bevilacqua’s treatment. On January 5, 2005, Bevilacqua’s attorney sent a letter to Dr. Eisen revoking Bevilacqua’s consent, specifically referencing the Thermage Release. The publication in the National Enquirer caused Bevilacqua to seek medical treatment for emotional distress.
On March 8, 2006, Bevilacqua filed suit alleging Dr. Eisen breached his duty of confidentiality, violated her right to privacy under G.L.c. Ill, §70, intentionally inflicted emotional distress, and engaged in practices prohibited under G.L.c. 93A by disclosing the photo *57 graphs outside of his office without disguising her appearance. Bevilacqua also filed suit against Therm-age alleging intentional infliction of emotional distress, invasion of privacy, and violation of G.L.c. 93A[4] for publishing the unaltered photographs in the National Enquirer. Lastly, Bevilacqua included a count of civil conspiracy against both Defendants.
DISCUSSION
I.Standard of Review
Summary judgment shall be granted when there is “no genuine issue as to any material fact,” and “the moving party is entitled to a judgment as a matter of law.” Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976), quoting Mass.R.Civ.P. 56(c). The burden of proof is on the moving party, “even if [he or she] would have no burden on an issue if the case were to go to trial.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party may satisfy the burden by either submitting affirmative evidence that negates an essential element of the opposing party’s claim or demonstrating that the opposing party has no reasonable expectation of proving an essential element of their claim at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 808-09 (1991). When the moving party has met their burden, the “adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” Mass.R.Civ.P. 56(e).
II.G.L.c. 93A
As a jurisdictional matter, the Defendants argue they are entitled to summary judgment on the G.L.c. 93A counts because it is undisputed that Bevilacqua did not serve a demand letter prior to filing suit. The Defendants are correct that serving a demand letter, which lists among other things the alleged unfair and deceptive practices, is a jurisdictional pre-requisite under G.L.c. 93A, §9(3). See Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975). As Bevilacqua does not dispute her failure to satisfy the demand letter requirement, the Defendants are entitled to summary judgment on the G.L.c. 93A counts, i.e. Counts 4 and 7.
III.Civil Conspiracy
The Defendants both move for summary judgment on the count of civil conspiracy, arguing there are no specific facts in the record indicating a common plan or conspiracy to invade Bevilacqua’s privacy. In opposition, Bevilacqua relies on Kurker v. Hill, 44 Mass.App.Ct. 184 (1998), and argues that the facts in the record demonstrate a joint venture between the Defendants, which is sufficient to establish a civil conspiracy.
As the Appeals Court explained in Kurker, “(t]wo kinds of civil conspiracy have been delineated in the decisions.” 44 Mass.App.Ct. at 188. “The element of coercion has been required only if there was no independent basis for imposing tort liability — where the wrong was in the particular combination of the defendants rather than in the tortious nature of the underlying conduct.” Id. The other form of civil conspiracy, however, “derives from ‘concerted action,’ whereby liability is imposed on one individual for the tort of another.” Id. Here, Bevilacqua argues no coercion is required because she asserts an independent basis for liability, namely Dr. Eisen’s alleged breach of the duty of confidentiality. The court agrees that Bevilacqua cannot prove coercion and also concludes that she has no reasonable expectation of proving concerted action.
“Key to this cause of action is a defendant’s substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan.” Kurker, 44 Mass.App.Ct. at 189. “In the tort field, the doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result.” Id., quoting Stock v. Fife, 13 Mass.App.Ct. 75, 82 n.10 (1982). Here, there is neither evidence in the record indicating that Therm-age had knowledge of a tortious plan by Dr. Eisen, nor evidence that Thermage substantially assisted to the achievement of a common tortious plan. In fact, Bevilacqua testified at her deposition that she has no facts to support a conspiracy between Dr. Eisen and Thermage, rather she has a “gut feeling” and only speculates that such apian existed. Bevilacqua’s subjective belief and speculation is insufficient to create a genuine issue of material fact because “unsubstantiated speculation as to what future evidence might show is insufficient to avoid summary judgment.” Hanover Ins. Co. v. Leeds, 42 Mass.App.Ct. 54, 59 n.6 (1997), citing Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991) (non-moving party “must set forth specific facts showing that there is a genuine issue for trial”). Therefore, the court concludes the Defendants are entitled to summary judgment on Count 8, the count of civil conspiracy.
IV.Dr. Eisen
A. The Releases
Dr. Eisen moves for summary judgment on the counts of breach of confidentiality, invasion of privacy under G.L.c. Ill, §70, and intentional infliction of emotional distress, relying on the releases signed by Bevilacqua as a complete defense. The SSSC Release, dated February 27, 2004, applied to SSSC personnel, which Dr. Eisen argues would apply to his position. In addition, the SSSC Release expressly applied to liability arising from the photographs taken during the rendering of medical care to Bevilacqua. Moreover, the Thermage Release, dated August 11, 2004, expressly permitted Dr. Eisen to disclose the photographs to Thermage. While pointing to the fact that Bevilacqua undisputedly signed the releases,[5] Dr. Eisen takes the *58 position that Bevilacqua is bound by the terms of the releases regardless of her subjective intention, Cormier v. Central Mass. Chapter of the Nat’l Safety Council, 416 Mass. 286, 289 (1993), and whether she read and understood the terms, Lee v. Allied Sports Assocs., Inc., 349 Mass. 544, 550-51 (1965).
“In this Commonwealth a right which has not yet arisen may be made the subject of a covenant not to sue or may be released.” Cormier, 416 Mass. at 288, quoting MacFarlane’s Case, 330 Mass. 573, 576 (1953). “It is the rule in this Commonwealth that the failure to read or to understand the contents of a release, in the absence of fraud or duress, does not avoid its effects.” Lee, 349 Mass. at 550-51. However, “it is settled that [a release is] voidable if obtained by a fraudulent misrepresentation as to its contents, in circumstances where the party signing it did so without reading it, relying on that misrepresentation.” King v. Motor Mart Garage Co., 336 Mass. 422, 426 (1957). “The question whether there is fraud in obtaining a release is generally one of fact.” Lee, 349 Mass. at 551. “In the absence of any concealment of or false representations as to the contents of the release it could be ruled as matter of law that the release was not procured by fraud.” Id.
Bevilacqua contends the releases should not bar her claims because Nurse Willner induced her consent by. making misrepresentations of material fact. Specifically, Bevilacqua argues she signed both releases because Nurse Willner assured her that the photographs would only be used internally in SSSC, and altered to disguise her appearance. Additionally, Bevilacqua asserts that Nurse Willner actually concealed language in the Therm-age Release with a folder which, along with her reliance on the misrepresentations made, precluded her from reading the actual language. Bevilacqua thereby argues the effects of the releases should be avoided based on the misrepresentations and concealment by Nurse Willner. Consequently, while Dr. Eisen relies on Cormier and Lee those cases are distinguishable because here there are allegations of misrepresentation and concealment. See Cormier, 416 Mass. at 288 (there was “nothing to show that the release was procured by deceit or fraud or under duress”); Lee, 349 Mass. at 551 (plaintiff did not testify about any representations regarding what he signed).
For the purposes of this motion, Dr. Eisen does not dispute the fact that Nurse Willner misrepresented the content of the releases, rather he argues that he was neither involved with the signing of the releases nor present when they were signed. Furthermore, Dr. Eisen argues any misrepresentations cannot be attributable to him because Nurse Willner is an employee of SSSC, and not his agent. In contrast, Bevilacqua argues Nurse Willner acted as Dr. Eisen’s agent with apparent authority. A release can be voided because of the misrepresentations of an agent. See King, 336 Mass. at 424-26 (plaintiff did not read the release based on the agent falsely stating the document was only used to keep a record of locked cars in the defendant-principal’s parking garage); Beaulieu v. Lincoln Rides, Inc., 328 Mass. 427, 430 (1952) (plaintiff did not read the release based on the agent falsely stating the document was a receipt). Since Bevilacqua argues Nurse Willner acted as Dr. Eisen’s agent in facilitating the execution of the releases, the issue is whether a genuine factual dispute exists over agency, which would make summary judgment inappropriate.
B. Agency
“An agency ‘results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control.’ ” Kirkpatrick v. Boston Mut. Life Ins. Co., 393 Mass. 640, 645 (1985), quoting Restatement (Second) ofAgency§l (1958). The question of “whether one has acted as an agent is ordinarily a question of fact.” Spencer v. Doyle, 50 Mass.App.Ct. 6, 8 (2000), and cases cited. “Apparent authority, is ‘created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.’ ” Theo & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736, 745 (2000), quoting Restatement (Second) of Agency §27 (1958). “If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized.” Hudson v. Massachusetts Prop. Ins. Underwriting Ass’n. 386 Mass. 450, 457 (1982), citing W.A. Seavey, Agency §8E, at 14 (1964).
Dr. Eisen relies on an affidavit wherein he asserts that both he and Nurse Willner are employees of SSSC, which precludes an actual agency relationship between them. This fact is not dispositive, however, because Bevilacqua bases her argument on apparent authority. See Theos & Sons, Inc., 431 Mass. at 745 (apparent authority is based on the principal’s conduct). Here, the record indicates that Dr. Eisen spoke with Bevilacqua about taking photographs to reflect her appearance before and after the treatment. In the course of her treatment, Nurse Willner aided Dr. Eisen with Bevilacqua’s preoperative work. In fact, Bevilacqua testified at her deposition that she generally dealt with Nurse Willner, as she only saw Dr. Eisen when he performed treatment. Furthermore, Nurse Willner facilitated the execution of the SSSC Release by representing that the photographs would only be used internally, which is consistent with what Dr. Eisen told Bevilacqua when he had asked to take before and after photographs. Nurse Willner also facilitated the execution of the Thermage Release by representing that the photographs would only be disclosed in Dr. Eisen’s office. Based on the facts in the record, the court concludes there is a genuine issue of material fact regarding whether Dr. Eisen cloaked Nurse Willner in apparent authority, and whether Dr. Eisen is thereby estopped from denying an agency relationship.
*59 First, a trier of fact could find it reasonable to believe that a nurse works for her physician. This impression could be strengthened based on the communication between Bevilacqua and Dr. Eisen, and between Bevilacqua and Nurse Willner. Second, Bevilacqua argues that she changed her position and signed the releases in reliance on Nurse Willner’s representations and authority. Consequently, the court concludes that summary judgment is inappropriate on Bevilacqua’s claims against Dr. Eisen for breach of confidentiality, invasion of privacy, and intentional infliction of emotional distress, Counts 1,2, and 3.[6]
V. Thermage
A. Agency
Thermage also moves for summary judgment on the counts of intentional infliction of emotional distress and invasion of privacy against it, arguing that any wrongdoing should solely be attributable to Dr. Eisen because it reasonably relied upon the validity of the Thermage Release. In response, Bevilacqua argues it is undisputed that Dr. Eisen acted as an agent of Thermage, and any wrongdoing is thereby attributable to Thermage as a principal. However, the court concludes that, despite Bevilacqua’s conclusoiy assertion to the contrary, there are no specific facts evidencing an agency relationship between the Defendants.
Bevilacqua relies on the fact that Nurse Willner and Dr. Eisen executed the Thermage Release on behalf of Thermage, but a business relationship does not automatically establish an agency relationship. See Theos & Sons, Inc., 431 Mass. at 742-45 (no actual agency between engine manufacturer and authorized parts and services dealer over non-warranty work). Bevilacqua speculates that an agency relationship existed without specific facts in support, when the Defendants may have only acted pursuant to a contract. Moreover, the right of a principal to control the agent is an essential element of the agency relationship, Spencer, 50 Mass.App.Ct. at 10, and Bevilacqua has failed to produce any specific facts evidencing that Dr. Eisen was subject to Thermage’s control. In fact, Dr. Eisen produced an affidavit indicating that Thermage had no control over his activities. Bevilacqua’s failure to advance specific facts sufficient to establish the existence of a genuine issue of material fact, regarding an agency between the Defendants, allows the court to determine there is no agency as a matter of law, even though the question of agency is usually one for the trier of fact. See Theo & Sons, Inc., 431 Mass. at 742.
While Bevilacqua also invokes apparent authority, the doctrine cannot apply because at the time she signed the Thermage Release she had had no contact of any kind with Thermage. See Normandin v. Eastland Partners, Inc., 68 Mass.App.Ct. 377, 385-86 (2007) (no apparent authority where plaintiffs neither communicated with nor had knowledge of the purported principal when they executed a land swap agreement). There are simply no facts in the record indicating that either Nurse Willner or Dr. Eisen informed Bevilacqua that the photographs would be released to Thermage pursuant to the Thermage Release. In fact, Bevilacqua asserts that Nurse Willner and Dr. Eisen represented that the photographs were only to be used internally in SSSC or Dr. Eisen’s office. Consequently, as The-rmage was neither identified regarding the photographs nor any release, Thermage would have been an undisclosed principal, thereby making the doctrine of apparent authority inapplicable. See id. (“there can be no apparent authority created by undisclosed principal”). Absent an agency relationship between the defendants, the only remaining issue is whether Thermage alone engaged in tortious conduct.
B. Intentional Infliction of Emotional Distress
Thermage argues it is entitled to summary judgment because publishing photographs pursuant to a signed release, without knowledge of any misrepresentations or invalidity of consent, does not satisfy the high standard for extreme and outrageous conduct as a matter of law. To prevail on a claim for intentional infliction of emotional distress, a plaintiff must establish “(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, ... (2) that the defendant’s conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiffs distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.” Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997), quoting Payton v. Abbott Labs, 386 Mass. 540, 555 (1982).
Regarding extreme and outrageous conduct, “liability cannot be predicated upon ‘mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities,’ nor even is it enough ‘that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by ‘malice, ’ or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.’ ” Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987), quoting Restatement (Second) of Torts §46, comment d (1965). In fact, “liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.” Id. “In considering whether a plaintiff has made out a claim . . . the trier of fact ‘would be entitled to put as harsh a face on the defendant’s actions as the basic facts would reasonably allow.’ ” Id. at 100, quoting Richey v. American Auto. Ass’n, 380 Mass. 835, 839 (1980).
*60 Here, the record indicates Thermage received a release signed by Bevilacqua, which expressly permitted it to use the photographs in advertisements. Even if the trier of fact voids the Thermage Release due to Nurse Willner’s misrepresentations, Thermage acted consistently with the apparent express authorization prior to Bevilacqua’s revocation, relying on its validity without facts suggesting Bevilacqua did not consent. In fact, Bevilacqua testified during her deposition that she has no specific facts evidencing that Thermage either conspired or consulted with Dr. Eisen in facilitating her consent, rather she just has a “gut feeling” Thermage knew what transpired. Considering the facts in the record and putting as harsh a face on Thermage’s actions as the facts reasonably allow, the court agrees with Thermage and concludes the alleged conduct is not extreme and outrageous as a matter of law. See Foley, 400 Mass. at 99-100. Therefore, The-rmage is entitled to summary judgment on Count 6 for intentional infliction of emotional distress.
C. Invasion of Privacy
Lastly, Thermage argues it is entitled to summary judgment on the count of invasion of privacy because it published the photographs in reasonable reliance on the Thermage Release. Under G.L.c. 214, §1B, “to be actionable, the interference [with privacy] must be unreasonable and either substantial or serious.” Ellis v. Safety Ins. Co., 41 Mass.App.Ct. 630, 637 (1996). “The plaintiff must show that there was a ‘gathering and dissemination of information which she contends was private.’ ” Nelson v. Salem State Coll., 446 Mass. 525, 536 (2006), quoting Dasey v. Anderson, 304 F.3d 148, 154 (1st Cir. 2002).
The court agrees with Thermage because Bevilacqua has not advanced any specific facts indicating Thermage had any knowledge about the photographs being disclosed without consent prior to publication. Consequently, this is not a case where the defendant knowingly disclosed confidential information without the consent of the patient.[7] If the trier of fact concludes that Bevilacqua did not consent to such disclosure, then at most Thermage inadvertently disclosed the information pursuant to a signed release. Therefore, the court concludes Bevilacqua has no reasonable expectation of proving unreasonableness at trial, thereby making summary judgment appropriate on Count 5.
Bevilacqua relies on Alberts u. Devine, 395 Mass. 59 (1985), but Alberts is distinguishable from the present case for multiple reasons. First, Alberts involved the breach of a physician’s duty of confidentiality and a cause of action to enforce the duty. Id. at 65-69. Second, the Supreme Judicial Court expressly stated that it would not rule on whether an action for invasion of privacy existed under common law because any such right “would not permit recovery in this case beyond the recovery available for a physician’s violation of the duty of confidentiality . . . and for the inducement of such a violation.” Id. at 70.[8] Finally, even if Bevilacqua alleged Thermage induced a breach of confidentiality, Alberts is inapplicable because liability for inducement is based on the general rule that “a plaintiff may hold liable one who intentionally induces another to commit any tortious act that results in damage to the plaintiff.” Id. at 71. Here, there are no facts in the record suggesting that Thermage intentionally induced Dr. Eisen to breach his duty of confidentiality.[9] Therefore, the court concludes Al-berts is inapplicable and Thermage is entitled to summary judgment on the count for invasion of privacy.
ORDER
For the above stated reasons, it is ORDERED that Richard F. Eisen’s motion for summary judgment be ALLOWED with respect to Count 4 and Count 8, and be DENIED with respect to Count 1, Count 2, and Count 3. It is further ORDERED that Thermage, Inc.’s motion for summary judgment be ALLOWED with respect to Count 5, Count 6, Count 7 and Count 8.

In her answer to interrogatories, Bevilacqua asserted that Dr. Eisen had made such statements. At her deposition, however, Bevilacqua repudiated the answer and attributed the statements to Nurse Willner. The record indicates Nurse Willner has not been deposed in this matter.

At her deposition, Bevilacqua denied writing the X.

The complaint appears to contain a scrivenér’s error within Count 7. Count 7 seeks 93A relief against Dr. Eisen when it appears the plaintiff intended to name Theimage as the object of Count 7. The 93A claim against Dr. Eisen is set forth in Count 4.

In her deposition, Bevilacqua had raised a question regarding the signature on the Thermage Release, but later conceded that she probably signed the release in question. Nonetheless, in her opposition, Bevilacqua does not dispute that she signed either release.

Dr. Eisen argues that Bevilacqua only alleged “direct claims” in the complaint. The court notes that the torts of the agent are considered to be the torts of the principal. See Medeiros v. Middlesex Ins. Co., 48 Mass.App.Ct. 51, 56-57 (1999) (tort liability is exclusively vicarious and imposed by operation of law, regardless of the principal’s lack of fault or involvement).

The court notes that neither party cited to Tower v. Hirschhorn, 397 Mass. 581, 586 (1986), where the Supreme Judicial court held that a physician’s disclosure of confidential information without patient consent could give rise to liability under G.L.c. 214, §1B for invasion of privacy. Nonetheless, Tower is distinguishable because it involved a physician with a duty of confidentiality, rather than a third party who received and disclosed information pursuant to a signed release.

The Supreme Judicial Court did not address G.L.c. 214, §1B because the alleged conduct occurred before the Legislature enacted the statute. 395 Mass. at 69-70.

Consequently, even though no court has extended Tower to circumstances where a party induces disclosure by a physician, like Alberts did with the duty of confidentiality, there are no specific facts in the record indicating Thermage intentionally induced Dr. Eisen to invade Bevilacqua’s privacy.