JOHN W. BAKER & another[1] *vs.* WILTON F. GRAY, THIRD, & another.[2]

No. 01-P-1003.

Plymouth. January 15, 2003. - March 24, 2003.

Present: PORADA, SMITH, & MASON, JJ.

*Vessel,* Certificate of number. *Governmental Immunity. Due Process of Law. Constitutional Law,* Freedom of speech and press, Equal protection of laws.

Discussion of the doctrine of qualified immunity as applied in a civil action alleging a violation of 42 U.S.C. § 1983. [622-623]

In a civil action brought by the owners of two vessels against a State environmental police officer who seized one vessel's certificate of number and the number placards from both vessels, the defendant's actions did not violate G. L. c. 90B, § 11(*m*), in that the defendant's actions did not constitute a suspension or revocation of the plaintiffs' certificates of number within the meaning of the statute, and therefore, no hearing was required; in any event, the plaintiffs could not recover against the defendant for a violation of 42 U.S.C. § 1983 based on the alleged violation of § 11(*m*) unless he also violated a Federal statutory or constitutional right. [623-624]

In a civil action brought by the owners of two vessels against a State environmental police officer who seized one vessel's certificate of number and the number placards from both vessels, the defendant's actions did not constitute a violation of the plaintiffs' rights under the due process clause of the Fourteenth Amendment to the United States Constitution, because the defendant did not suspend or revoke the plaintiffs' certificate of number, but rather seized the certificate and the placards under circumstances where he could reasonably believe that each was invalid and was being used in violation of G. L. c. 90B; moreover, because the plaintiffs had adequate State remedies available for the possible wrongful deprivation of property, the defendant was entitled to qualified immunity from liability for his actions. [624-626]

On a motion for summary judgment in a civil action brought by the owners of two vessels against a State environmental police officer who seized one vessel's certificate of number and the number placards from both vessels, the plaintiffs failed to establish that the defendant's actions were based on

[1]Troy Acosta.

[2]The division of environmental law enforcement of the Department of Fisheries, Wildlife and Environmental Law Enforcement.

the plaintiffs' opposition to any actions by certain town officials, and therefore, the defendant was entitled to qualified immunity from the plaintiffs' claims under 42 U.S.C. § 1983 alleging violation of their clearly established rights under the First and Fourteenth Amendments to the United States Constitution. [626-628]

CIVIL ACTION commenced in the Superior Court Department on October 14, 1997.

The case was heard by *Richard F. Connon*, J., on a motion for summary judgment.

*Matthew Q. Berge*, Assistant Attorney General, for the defendants.

*Robert H. D'Auria* for the plaintiffs.

MASON, J. The plaintiffs, John Baker and Troy Acosta, brought this action in October, 1997, against an environmental police officer, Wilton F. Gray, III (Gray), and his employer, the division of environmental law enforcement (division) of the Department of Fisheries, Wildlife and Environmental Law Enforcement (department). Among other claims, the complaint alleged that Gray, in violation of the plaintiffs' civil rights, confiscated a dealer "certificate of number," see G. L. c. 90B, § 3(*b*), and two number placards showing their numbers from two vessels the plaintiffs were operating. The complaint sought both damages and injunctive relief under 42 U.S.C. § 1983.

Following extensive discovery, the defendants moved for summary judgment, asserting, among other grounds, that Gray was entitled to qualified immunity from the § 1983 claim. The motion was denied, and this is an appeal by Gray from the judge's failure to dismiss the § 1983 claim against him. See *Kent* v. *Commonwealth*, 437 Mass. 312, 316-317 (2002), and cases cited. We reverse.

*Background.* We recite the pertinent facts shown by the materials contained in the summary judgment record which were unmet by any countervailing materials. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991); *Ng Brothers Constr., Inc.* v. *Cranney*, 436 Mass. 638, 644 (2002).

The plaintiffs' business, formerly a corporation, is now conducted in their individual capacities under the name "Patriot

Marine." The business is located on Ferry Street in Marshfield and sells, leases, and repairs a variety of marine vessels. Pursuant to G. L. c. 90B, § 3(b), set forth in the margin,[3] any manufacturer or dealer of motorboats in the Commonwealth must obtain a "certificate of number" for motorboats that it is "testing or demonstrating," and must display the number on each such boat. Another section of the statute, c. 90B, § 3(a), provides that the owner of any motorboat "principally used in the commonwealth" must obtain a separate certificate of number for that motorboat and display the number shown in the certificate on that motorboat. Section 14 of c. 90B provides that fines may be imposed on persons who violate the provisions of the statute.

In 1987, the former corporation, indicating that it was doing business as "Patriot Marine" at 1240 Ferry Street in Marshfield, applied for two dealer certificates of number for Patriot Marine. In response, the division issued dealer certificates of number 3999D and 4000D. Thereafter, at the required two year intervals, the certificates were renewed.

In February, 1997, the division received a report from the Coast Guard that a vessel displaying the number 4000D had been involved in an oil spill in Cape Cod Canal. In April, 1997, the division received another report that a vessel displaying the number 3999D had been observed moored at a location in Wareham that was not connected with a dealership. An environmental police officer commenced an investigation, visited Patriot Marine's listed address at 1240 Ferry Street in Marshfield, and observed that there were no signs displayed at the property

---

[3]General Laws c. 90B, § 3(b), provides: "The requirements of this chapter shall apply to motor boats operated by manufacturers or dealers solely for the purpose of testing or demonstrating. The description of the motorboat will be omitted from the certificates of number since the numbers and certificates of number awarded may be transferred from one motorboat to another. In lieu of the description the word 'manufacturer' or 'dealer,' as appropriate, will be plainly marked on each certificate of number. The manufacturer or dealer may have the number awarded painted upon or attached to a removable sign temporarily but firmly mounted upon or attached to the boat being demonstrated or tested. This subsection shall not apply to motorboats owned by a dealer or manufacturer and which are used for purposes other than testing or demonstrating."

identifying a boat dealership named Patriot Marine or indicating that vessels could be purchased at that location.

On April 24, 1997, Patriot Marine mailed to the division's office in Boston a renewal application for its certificates of number which were due to expire on June 9, 1997. It did not receive any response to this application prior to June 9. Accordingly, on June 10, 1997, an employee of Patriot Marine went to the division's local office in Hyannis to check on the status of the certificates. On that date, the Hyannis office issued temporary certificates to Patriot Marine (once again for numbers 3999D and 4000D), and subsequently, on June 18, 1997, permanent certificates were issued.

On June 11, 1997, prior to the issuance of the permanent certificates, the division's program coordinator for boat registration, Allen Millner, sent a letter to Patriot Marine stating that its request for renewal of its certificates of number had been denied "under the terms of Chapter 90B" and that, as of that date, "the registrations will no longer be valid." At the time Millner sent this letter to Patriot Marine, neither he nor anyone in the division's Boston office had any knowledge that the Hyannis office had already issued temporary certificates to Patriot Marine; nor did the Hyannis office have any knowledge of the denial of the renewal of registrations.

On July 9, 1997, Gray was dispatched to 55-59 Main Street in Wareham in response to a report from the Wareham harbormaster that boats moored there were improperly displaying dealer registration numbers. When he arrived at the property, Gray found that a tugboat and other vessels were moored there, but that none of them was displaying a number. Gray asked an individual who was present at the property, Richard Baker (Richard),[4] for a registration or other documentation for the tugboat. When Richard was unable to produce documentation, Gray issued a citation charging Richard with failure to produce documentation for a vessel upon demand, and maintaining an unregistered vessel.

On August 30, 1997, Gray was again dispatched to the Ware-

---

[4]Richard Baker is not related to the plaintiff in this action, John W. Baker. To avoid confusion, we refer to Richard Baker as Richard and John W. Baker as Baker in this opinion.

ham property in response to a report that boats moored there were improperly displaying dealer registration numbers. Gray found the same tugboat that had previously been moored there but this time it was displaying one of the numbers, 3999D. Another boat was displaying the other number, 4000D. Richard was again at the property, and Gray asked him to produce certificates for both of these numbers. Although initially refusing, Richard subsequently provided a certificate for number 3999D, but not for number 4000D. After checking with his dispatcher in Boston, and being informed that the certificates for both numbers were no longer valid, Gray issued an additional citation to Richard and confiscated the certificate Richard had produced, as well as the number placards displayed on both vessels.

*Discussion.* The Federal civil rights statute, 42 U.S.C. § 1983 (1994 & Supp. v 1999), provides that:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

The doctrine of qualified immunity may shield State officials from liability for civil damages under this statute, so long as they are performing discretionary functions and do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982). See *Breault* v. *Chairman of the Bd. of Fire Commrs. of Springfield*, 401 Mass. 26, 31-32 (1987), cert. denied, 485 U.S. 906 (1988). "Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." *Davis* v. *Scherer*, 468 U.S. 183, 190 (1984).

"The 'applicable standard' is an objective one. . . . 'Because qualified immunity does not address the substantive viability of a section 1983 claim, but rather the objective reasonableness of

a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity.' " *Amsden* v. *Moran*, 904 F.2d 748, 751 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991), quoting *Collins* v. *Marina-Martinez*, 894 F.2d 474, 478 (1st Cir. 1990).

In the present case, the plaintiffs do not dispute that Gray was performing a discretionary function when he seized as evidence their certificate of number and number placards during the incident occurring on August 30, 1997. Nor could they reasonably do so. While environmental police officers are generally authorized to "exercise throughout the commonwealth . . . all the authority of police officers and constables, except the service of civil process," see G. L. c. 21, § 6B, there is no law detailing precisely the actions Gray should have taken when he was confronted with the situation existing at the Wareham property on August 30, 1997. His actions were therefore discretionary. See *Davis* v. *Scherer*, *supra*, at 196 n.14 (law creates discretionary authority for purposes of § 1983 qualified immunity whenever it "fails to specify the precise action that the official must take in each instance"). Contrast *Breault* v. *Chairman of the Bd. of Fire Commrs. of Springfield*, *supra* at 33-34; *Cady* v. *Marcella*, 49 Mass. App. Ct. 334, 339 (2000).

The plaintiffs nevertheless claimed that Gray violated clearly established rights that they had pursuant to G. L. c. 90B and pursuant to the due process clause of the Fourteenth Amendment to the United States Constitution. They also claimed that Gray violated their clearly established rights pursuant to the First Amendment to the United States Constitution and to the equal protection clause of the Fourteenth Amendment to the United States Constitution. We address each of these claims in turn.

1. *Violation of G. L. c. 90B.* The plaintiffs claimed that Gray violated their clearly established rights as set out in G. L. c. 90B because he effectively revoked their certificates of number without a hearing in violation of G. L. c. 90B, § 11(*m*). Section 11(*m*) provides that the director of the department may

"[s]uspend or revoke and require the surrender of any certificate of number issued by him if, in his opinion, after

a hearing, after due notice, by him or by some person designated by him, the operator is guilty of violating any provision of this chapter or of any rule and regulation made under authority hereof. Pending such hearing and any appeal from a decision hereunder, said certificate of number shall be suspended."

Gray's actions did not constitute a suspension or revocation of the plaintiffs' certificates of number within the meaning of this provision. Gray merely seized one of the plaintiffs' certificates of number and the number placards based on information he received from his dispatcher that the certificates of number for both placards were no longer valid. He did not himself suspend or revoke the certificates.

In any event, the plaintiffs cannot recover against Gray under 42 U.S.C. § 1983 even if he did violate their rights under G. L. c. 90B, § 11(*m*), in seizing their certificate of number, so long as he did not also violate their rights under the due process clause of the Fourteenth Amendment to the United States Constitution. This is because § 1983 protects against the violation of Federal statutes and constitutional provisions. It does not protect against the violation of State statutes such as c. 90B, unless the statutory violation is also a violation of a Federal right. See *Gutierrez* v. *Massachusetts Bay Transp. Authy.*, 437 Mass. 396, 401 (2002), and cases cited. See also *Davis* v. *Scherer*, 468 U.S. at 193-197 (officials of State highway department did not forfeit their qualified immunity from suit for violation of Federal constitutional rights merely because they failed to comply with clear State regulation in discharging employee of department).

2. *Due process violation.* The plaintiffs claimed that Gray in fact did violate their clearly established rights under the due process clause of the Fourteenth Amendment to the United States Constitution by seizing their certificate of number without complying with the notice and hearing provisions of G. L. c. 90B, § 11(*m*). More specifically, the plaintiffs claimed that they had a protectible property interest in their certificate of number and, hence, under the due process clause, Gray was precluded from suspending or revoking that certificate except pursuant to the notice and hearing provisions set forth in G. L. c. 90B, § 11(*m*). See *Konstantopoulos* v. *Whatley*, 384 Mass.

123, 132-135 (1981). As we have previously noted, however, Gray himself did not suspend or revoke the plaintiffs' certificates of number. Rather, he merely seized a certificate of number and the number placards under circumstances where he could reasonably believe that each was invalid and was being used in violation of G. L. c. 90B.

Moreover, it is well settled that where a State employee commits a random act of type involved in this case, the existence of adequate State remedies for the possible wrongful deprivation of property becomes "highly relevant" to the issue of whether a violation of procedural due process has occurred. *Amsden* v. *Moran, supra* at 755, citing *Zinermon* v. *Burch,* 494 U.S. 113, 125-126 (1990). This is because "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Zinermon* v. *Burch, supra* at 126.

To the extent they believed that Gray's seizure of their certificate was somehow improper, the plaintiffs had several postdeprivation remedies available to them, including an action for conversion, which they in fact brought. In addition, they could have contacted the department and informed it that the certificate had been validly issued. Alternatively, they could have brought an action for replevin pursuant to G. L. c. 247, § 7. Finally, to the extent the plaintiffs believed that their certificate had been improperly suspended or revoked without the hearing required by G. L. c. 90B, § 11(*m*), they could have brought an action pursuant to the Commonwealth's administrative procedure act, G. L. c. 30A, §§ 1 et seq. That act provides that "any person . . . aggrieved by a final decision of any agency in an adjudicatory proceeding . . . shall be entitled to a judicial review thereof . . . ." G. L. c. 30A, § 14. The term "adjudicatory proceeding" is defined as any proceeding before an agency in which the legal rights or privileges of a person "are required by constitutional right or by any provision of the General Laws to be determined after opportunity for an agency hearing." G. L. c. 30A, § 1(1). Hence, the act provides for judicial review of an agency action regardless of whether a hearing was provided, so long as such a hearing was required.

See *Milligan* v. *Board of Registration in Pharmacy*, 348 Mass. 491, 499-500 (1965); *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 928 n.6 (1980).

In view of these numerous postdeprivation remedies available to the plaintiffs, Gray reasonably could believe that he was not depriving the plaintiffs of property without any opportunity for a hearing or other due process. He was entitled, therefore, to qualified immunity to the extent that the plaintiffs' § 1983 claim was based on an alleged violation of their right to procedural due process. See *Amsden* v. *Moran*, *supra* at 754-757 (State officials entitled to qualified immunity on procedural due process claims where adequate remedies were available for their alleged improper deprivation of plaintiff's license).

3. *Other claims.* The plaintiffs also claimed that Gray violated their clearly established rights under the First Amendment to the United States Constitution, and under the equal protection clause of the Fourteenth Amendment to the United States Constitution, by seizing their certificate of number and number placards to punish or retaliate against them for opposing certain actions of the Wareham zoning board of appeals and also the Wareham harbormaster. More specifically, the plaintiffs claimed that, at the time Gray seized their certificate of number and number placards, Baker had filed an action in the Plymouth Superior Court. This action sought review of a decision of the Wareham zoning board of appeals which had vacated a decision of the Wareham building inspector that permitted Baker to keep certain of his boats at the 55-59 Main Street address in Wareham. In addition, Baker was in a dispute with the Wareham harbormaster over an alleged improper use of a local boat ramp and an accompanying oil spill. The plaintiffs argued that Gray seized their certificate of number and number placards in retaliation for Baker's activities.

There is no evidence in the summary judgment record that Gray even knew that Baker was involved with Patriot Marine, or with the vessels moored at the Wareham property, at the time he seized the certificate of number and number placards, let alone that Baker was in any kind of dispute with Wareham

town officials.[5] To the contrary, Gray submitted an affidavit in which he stated:

> "On the day I retrieved 3999D and 4000D, I did not know that either John Baker or Troy Acosta existed. I only came to know that these individuals exist[ed] after they named me as a defendant in this lawsuit. Neither John Baker nor Troy Acosta ever demanded that I return the dealer Certificates of Number."

The summary judgment record further showed that it was the business entity, rather than Baker, who initially filed the application for dealer certificates of number for Patriot Marine, and that it was Richard, rather than Baker, who was present at the Wareham property on both occasions when Gray was there. There was no evidence contradicting Gray's assertion that he did not know Baker or Acosta or know that they were involved with Patriot Marine.[6]

Moreover, while the plaintiffs contended that the certificate of number seized by Gray was valid on its face, there was undisputed evidence in the record that persons in the division's Boston office had refused to renew Patriot Marine's certificates of number and had no knowledge that the Hyannis office of the division in fact had done so. There was also undisputed evidence in the record that Patriot Marine had listed its address as being in Marshfield, rather than in Wareham where the vessels displaying the dealer number placards issued to Patriot Marine were

---

[5]The plaintiffs argued in their brief that they should not be penalized for the lack of any evidence in the summary judgment record supporting their claims of improper retaliation against Gray because, at the time the defendants moved for summary judgment, they filed a motion for further discovery pursuant to Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974), but the judge failed to act on this motion. The plaintiffs, however, have not included a copy of this motion in their record appendix or explained precisely how additional discovery might have produced additional, admissible evidence in support of their claims. We, therefore, decline to consider this argument. See *Kunen* v. *First Agric. Natl. Bank*, 6 Mass. App. Ct. 684, 689 (1978).

[6]The plaintiffs argue that, during discovery, they learned that the division had preserved in its files a copy of an advertisement Baker had placed in a local newspaper soliciting information about any alleged wrongdoing by the Wareham harbormaster. The record established that the date of this advertisement was November 13, 1997, well after Gray had committed the actions at issue in this case.

moored. In these circumstances, it was plainly reasonable for Gray to conclude that the certificate of number and number placards were being used in violation of G. L. c. 90B.

We therefore conclude that, on the record before the judge, no reasonable fact finder could find that Gray's seizure of the certificate of number and number placards was based on the plaintiffs' opposition to any actions by Wareham town officials. Gray accordingly was entitled to qualified immunity from the plaintiffs' additional claims under 42 U.S.C. § 1983 alleging violation of their clearly established rights under the First Amendment and equal protection clause of the Fourteenth Amendment. See, e.g., *Baker* v. *Coxe*, 230 F.3d 470, 474-477 (1st Cir. 2000), cert. denied, 532 U.S. 995 (2001); *Cloutier* v. *Epping*, 714 F.2d 1184, 1192-1193 (1st Cir. 1983).

*Conclusion.* The order denying Gray qualified immunity is reversed, and the case is remanded to the Superior Court for entry of a judgment dismissing the plaintiffs' claim for damages against Gray pursuant to 42 U.S.C. § 1983; the plaintiffs may pursue a claim against Gray pursuant to 42 U.S.C. § 1983 only to the extent, if any, that they are seeking injunctive relief against him personally. See *Pace* v. *Moriarty*, 83 F.3d 261, 263 (8th Cir. 1996), and cases cited.

*So ordered.*