NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0277n.06

No. 09-1307

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**
**May 06, 2010**
LEONARD GREEN, Clerk

TYRONE MOORE,

    Plaintiff - Appellant

v.

UNKNOWN PREVO, et al.,

    Defendants - Appellees

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

_____ /

Before:      MARTIN, CLAY, and KETHLEDGE, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. This is a prisoner civil rights action filed pursuant to 42 U.S.C. § 1983. Tyrone Moore was a prisoner at the Riverside Correctional Facility in Ionia, Michigan. He alleges that, on July 2, 2007, Nurse Prevo[1] and two correction officers, Simmons and Doe, informed fellow-prisoner Franks, that Moore is HIV positive. Moore also alleges that Inspector L. Brown asked prisoner Henton if he knew that Moore had a sexually transmitted disease,[2] and that Officer Satterlee was "involved." On July 6, Moore was transferred to Ionia Maximum Security Correctional Facility because the Riverside Facility was closing.

On October 17, Moore filed a prisoner grievance form with the Michigan Department of

---

[1]Because the district court sua sponte dismissed Moore's Complaint soon after it was filed, the current record is extremely sparse. Accordingly, the record does not contain the last and/or first names of several prison officials and prisoners.

[2]It is unclear from the record on what day this allegedly took place.

Corrections. It was received by the grievance board on October 25. Nurse Saladin, who investigated the grievance, did not interview Moore. On November 1, Saladin sent a memorandum to M. Robinson, the grievance coordinator, stating that Saladin had investigated Moore's grievance and that Saladin found no documented encounters between Prevo and Moore on July 2, that Mr. Franks was unknown at the health care facility, that Prevo did not recollect meeting Moore, and that Prevo and the officers had adhered to department policies regarding the privacy of a prisoner's medical information. Moore was instructed that, should he wish to appeal the board's decision, he would need to file his appeal by December 11.

On December 7, Moore filed an appeal with the Michigan Department of Corrections, listing the same allegations that he had asserted in his original grievance. The grievance board did not receive the appeal until December 17, however, which was after the filing deadline. The board denied his appeal because it was late. Moore filed another appeal, stating that his first appeal was late because he was being transferred to another facility. The board again denied his appeal because, although it acknowledged that Moore was transferred during the relevant time period, it found that the transfer did not provide a basis to reconsider his first appeal.

On August 4, 2008, Moore filed a pro se complaint and application to proceed *in forma pauperis* in the United States District Court for the Western District of Michigan, alleging that Prevo, Simmons, Doe, Satterlee, and Brown, in their individual and official capacities, had violated his Fourth Amendment right to privacy when they disclosed his HIV-positive status to other officers and inmates. Magistrate Judge Ellen S. Carmody granted the request to proceed *in forma pauperis* and soon thereafter, sua sponte issued a Report and Recommendation, recommending that Moore's

complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and (a)(3) and 42 U.S.C. §1997e(c). She further recommended that the dismissal of the action count as a strike for purposes of 28 U.S.C. §1915(g) and that the court find no good-faith basis for appeal within the meaning of 28 U.S.C. §1915(a)(3).

Moore filed an objection on December 12, again alleging that his Fourth Amendment right to privacy had been violated. He also asserted for the first time a common law slander per se claim and that the Department of Corrections had violated state law and Michigan Department of Corrections policy. On February 5, 2009, the district court issued an order and judgment holding that Magistrate Judge Carmody had properly concluded under Supreme Court and Sixth Circuit precedent that Moore's constitutional right to privacy was not violated by the disclosure of his HIV infection to others. The court further held that Moore had waived his other arguments because he had not presented them to Magistrate Judge Carmody.

Under 28 U.S.C. §1915(e)(2)(B), a district court may dismiss sua sponte an *in forma pauperis* claim that is frivolous, malicious, or fails to state a claim upon which relief may be granted.[3] "We review de novo the dismissal of a prisoner's complaint on the basis that it failed to state a claim upon which relief can be granted." *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005) (citing *McGore v. Wrigglesworth,* 114 F.3d 601, 604 (6th Cir. 1997)). "In determining whether a prisoner has failed to state a claim, we construe his complaint in the light most favorable to him, accept his factual allegations as true, and determine whether he can prove any set of facts that

---

[3]The language of the statute specifies that the district court must dismiss an *in forma pauperis* complaint that it finds has failed to state a claim. 28 U.S.C. §1915(e)(2).

would entitle him to relief." *Id.* (citing *Turker v. Ohio Dep't of Rehab. & Corrs.*, 157 F.3d 453, 456 (6th Cir. 1998)).

The district court correctly held that, under our precedent, inmates have no constitutional privacy right barring disclosure of an inmate's HIV-positive status *to corrections officers*. *See Doe v. Wigginton*, 21 F.3d 733, 740 (6th Cir. 1994) (holding that prison officials did not violate an inmate's right to privacy when they disclosed his HIV status to a prison correction officer). However, the district court did not distinguish this from Moore's allegation that officers told *other inmates* about Moore's HIV status. In this case, the distinction makes a difference.[4]

We have never addressed whether an inmate has a Fourteenth Amendment privacy interest in having his sensitive medical information kept confidential from other inmates. However, other circuits' precedent offers some guidance. The Third Circuit has held that an inmate has a constitutional privacy right guarding against disclosure of his sensitive medical information,

---

[4]The dissent points to both *Wigginton* and *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1995) to contend that we have already held that prisoners have no constitutional right to privacy with regard to their personal information, period. We do not contest that those cases can be read to speak in such broad terms, so neither the dissent's nor the Third Circuit's reading of our cases can be called unreasonable. But we believe those cases' actual holdings, as opposed to their dicta, rest on narrower grounds that do not foreclose Moore's claim. Furthermore, adopting the dissent's reading would, it seems, create a circuit split over whether inmates may bring a claim against jail officials over the disclosure of their sensitive medical information to other inmates. As stated above, both the Second and Third Circuits have held that a prisoner would be able to bring such a claim sounding in the constitutional right to privacy. The Seventh Circuit has expressed doubt over whether a prisoner could bring such a claim under the Fourth Amendment's right to privacy, but suggested that the Eighth Amendment's cruel and unusual punishment clause might give rise to such a claim. *Anderson v. Romero*, 72 F.3d 518, 522-23 (7th Cir. 1995). We are aware of no other circuit to have categorically barred a prisoner from bringing a claim against prison officials over the unnecessary dissemination of his sensitive medical information to other inmates. Where our precedents do not squarely foreclose Moore's suit, we see no reason to extend them in a way that would create a circuit split.

especially to other inmates. *Doe v. Delie*, 257 F.3d 309, 317 (3d Cir. 2001). We adopt its reasoning

in full.

> There are at least two types of privacy protected by the Fourteenth Amendment: the individual interest in avoiding disclosure of personal matters, and the right to autonomy and independence in personal decision-making. *See Whalen* [*v. Roe*], 429 U.S. [589,] 599-600 [(1977)]; [*United States v.*] *Westinghouse* [*Elec. Corp.*], 638 F.2d [570,] 577 [(3d Cir. 1995)] . . . . As described above, [the appellant's] privacy interest clearly falls into the first category. Some courts have referred to the first category as a "right to confidentiality," to distinguish it from the right to autonomy and independence in personal decision making. *E.g. Powell v. Schriver*, 175 F.3d 107, 113-14 (2d Cir. 1999).
>
> It is beyond question that information about one's HIV-positive status is information of the most personal kind and that an individual has an interest in protecting against the dissemination of such information. *See Doe v.* [*Southeastern Pa. Transp. Autho.*], 72 F.3d [1133,] 1140 [(3d Cir. 1995)]; *Westinghouse*, 638 F.2d at 577. Moreover, a prisoner's right to privacy in this medical information is not fundamentally inconsistent with incarceration. Therefore, we join the Second Circuit in recognizing that the constitutional right to privacy in one's medical information exists in prison. *See Powell*, 175 F.3d at 112.
>
> We acknowledge, however, that a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen. We do not suggest that [the appellant] has a right to conceal this diagnosed medical condition from everyone in the corrections system. [The appellant's] constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security.

*Delie*, 257 F.3d at 317 (finding that prison officials who disclosed an inmate's HIV-positive status

to officers, guards, and inmates had violated the inmate's constitutionally protected privacy right).

The Second Circuit also has held that "prison officials can impinge upon [the right to maintain the

confidentiality of previously undisclosed medical information] only to the extent that their actions

are 'reasonably related to legitimate penological interests.'" *Powell,* 175 F.3d at 112 (finding that

a prisoner had a privacy interest in keeping his transsexual status from other inmates).

We join our sister circuits in finding that, as a matter of law, inmates have a Fourteenth Amendment[5] privacy interest in guarding against disclosure of sensitive medical information from other inmates subject to legitimate penological interests. Accordingly, the district court erred in finding that Moore's privacy claims failed as a matter of law. It remains to be seen if Moore's allegations have any factual support.[6]

---

[5]Moore alleges that the defendants invaded his Fourth Amendment privacy right and makes no mention of a Fourteenth Amendment claim. In light of the substantial leeway that we afford pro se pleadings, *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005), we construe Moore's complaint as grounding his claim in the Fourteenth Amendment.

[6]The district court refused to consider Moore's state-law claims alleging common law slander per se, violation of Michigan statutory law, and violation of Michigan Department of Corrections regulations on the ground that they were not raised until Moore filed his objections to the Magistrate Judge's Report and Recommendation. In so doing, the court relied upon our statement in *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000), that "issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived. . . [h]ence, Petitioner's failure to raise this claim before the magistrate constitutes waiver."

This, of course, is generally the rule, but it is a rule that assumes the context of the normal civil case. It assumes, at least, that the plaintiff (probably represented by counsel) has filed a complaint, that the complaint has been served, that the defendant has responded by way of either answer or dispositive motion, and that the plaintiff is aware that the matter has been referred to a magistrate for report and recommendation. Under these circumstances, an appreciable amount of time has normally passed, and the plaintiff has been put on notice by the defendant's responsive pleading of any potential deficiencies in his complaint that might necessitate a need to amend.

In this case, however, the only thing that occurred was Moore filing his complaint pro se on August 4, 2008. The complaint was never served or responded to, and the magistrate judge sua sponte recommended dismissal on September 18. In this posture, Federal Rule of Civil Procedure 15(a) would have allowed Moore to amend his complaint once as a matter of course, at least up until the magistrate judge issued the Report and Recommendation. Furthermore, as a pro se litigant, we afford Moore considerable latitude in both the substance of his pleadings and his compliance with procedural rules. *Spotts*, 429 F.3d at 250; *United States v. Willis*, 804 F.2d 961, 963 (6th Cir. 1986). In light of these circumstances, we believe it proper to construe Moore's presentation of additional

For the reasons above, we **AFFIRM** the district court's judgment to the extent that it dismisses Moore's privacy claims regarding disclosure of medical information to correctional staff. However, we **VACATE** the district court's dismissal of Moore's state law claims and **REMAND** with instructions to consider whether to allow amendment under the standards of Federal Rule of Civil Procedure 15. We additionally **REVERSE** for further proceedings on Moore's claims regarding disclosure of medical information to other inmates.

---

claims in his objection to the report and recommendation as an implicit request for leave to amend, and that *Murr*'s automatic waiver rule must yield.

KETHLEDGE, Circuit Judge, dissenting. Moore claims that prison officials violated his constitutional rights by telling other prisoners that he is infected with HIV. The district judge thought this claim barred by our precedents, notably *Doe v. Wigginton*, 21 F.3d 733 (6th Cir. 1994). I think so too, and therefore respectfully dissent.

The majority distinguishes *Wigginton* on the ground that it involved the disclosure of an inmate's HIV status by one prison official to another, whereas here the plaintiff alleges that prison officials disclosed his HIV status to other inmates. But nothing in *Wigginton* turned on the recipient of the message. Instead, *Wigginton* involved merely a straightforward application of our holding in *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir. 1981), under which private information receives no constitutional protection unless it relates to one of "those personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" *Id.* at 1090; *see also Kallstrom v. City of Columbus*, 136 F.3d 1055, 1061-62 (6th Cir. 1998). *DeSanti* itself involved a claim of constitutional protection for reports of "social histories" prepared by probation officers in juvenile-court cases. *See* 653 F.2d at 1081-82. We held that dissemination of those reports did not violate the juveniles' constitutional rights of privacy, because the information they contained was "far afield" from any fundamental right. *Id.* at 1090. Thus, when we stated in *Wigginton* that the inmate's "privacy argument [was] indistinguishable from that made in *DeSanti*," 21 F.3d at 740, we meant that the information at stake—the fact of an inmate's HIV infection—did not implicate a fundamental right and thus did not trigger any constitutional protection at all. That, in my view, renders irrelevant the distinction between the recipient in *Wigginton* and the recipient here.

Our decision in *Jarvis v. Bellman*, 52 F.3d 125 (6th Cir. 1995), confirms the point. In *Jarvis*, we rejected a rape victim's claim that prison officials violated her constitutional privacy rights by permitting her assailant to view her medical records and those of her infant child. *Id.* at 125-26. Relying on *DeSanti* and *Wigginton*, we reasoned broadly that "[d]isclosure of plaintiff's medical records does not rise to the level of a breach of a right recognized as 'fundamental' under the Constitution." *Id.* at 126. The same logic compels dismissal in this case, because the plaintiff's claim here is based solely on prison officials' disclosure of a particular detail from his medical records.

The Third Circuit reads our precedents the same way I do. In *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001)—upon which the majority relies here—the Third Circuit acknowledged that the "Sixth Circuit had explicitly held that the right of privacy is not implicated *at all* by prison officials' disclosure of an inmate's HIV status." *Id.* at 319 n.7 (emphasis added) (citing *Wigginton*, 21 F.3d at 740). Indeed the court observed that the "Sixth Circuit does not recognize the right to privacy in one's medical information in *any* setting." *Id.* (emphasis added).

For these reasons, I respectfully dissent.