Brassard, Raymond J., J.
The plaintiff Christine M. Alexander (“Alexander”) commenced this action against the defendants Harold W. Clarke (“Clarke”), Terre K. Marshall (“Marshall”), Thomas Groblewski (“Groblewski”), James A. Bellow (“Bellow”), and Jeffrey A. Kidder (“Kidder”) (collectively, “Defendants”) seeking to recover under G.L.c. 6, §§177 & 178 (Count I), G.L.c. 214, §1B (Count II), G.L.c. 258, §4 (Count III), and 42 U.S.C. §1983 (Count IV). This matter is before the court on the Defendants’ motions to dismiss the claims against them. For the reasons set forth below, the motions brought by the Defendants are ALLOWED in part and DENIED in part.[2]
BACKGROUND
The following is taken from Alexander’s complaint.
Inmate Jorge Blanco (“Blanco”), a pro se litigant, brought a lawsuit against the University of Massachusetts Medical Health Program (“UMCH”). Bellow and Kidder, of Morrison Mahoney, LLP, represented UMCH against Blanco.
Pursuant to a discovery request, Bellow and Kidder sent several documents to Blanco on March 24, 2009. Within these documents was the following information about Alexander:[3]
CHRISTINE ALEXANDER [W#####]: Request for Propecia for hair loss. In grievance response, you told her to put in sick slip. Has she put in any sick slips since June? Has she been seen for her hair loss problem and if so, were her hair issues set-tied?[4],[5]
Upon noticing the reference to Alexander, Blanco immediately notified her of the disclosure.
On April 8, 2009, Alexander wrote Bellow and Kidder regarding her concerns arising from the disclosure. A month later, she submitted a demand letter, pursuant to G.L.c. 258, §4, to the Attorney General’s office.
On April 6,2009, Alexander filed a UMCH grievance concerning the release of the information. Unsatisfied with the response she received, on May 7, 2009, she filed a first tier grievance appeal, which was denied. On May 21, 2009, Alexander filed a second tier grievance appeal. Marshall, the Assistant Deputy Commissioner of Clinical Services at the Department of Correction (“DOC”), denied this appeal on June 9, 2009, noting that “the purpose of the Department of Correction’s medical grievance and appeal process is solely to address and resolve current health care concerns.”
In December of 2009, Alexander filed suit against Bellow, Kidder, Groblewski,[6] Clarke,[7] and Marshall under G.L.c. 6, §§177 & 178 (Count I), G.L.c. 214, §1B (Count II), G.L.c. 258, §4 (Count III), and 42 U.S.C. § 1983 (Count IV), for their allegedly negligent actions. Groblewski, Clarke and Marshall are being sued in both their official and personal capacities. Alexander seeks both monetary damages and injunctive relief. The Defendants have filed 12(b)(6) motions to dismiss all counts.
DISCUSSION
Although it is unnecessary for a complaint to describe detailed factual allegations, it must set forth more than labels and conclusions and should “raise a *292 right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact).” Iannachino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal quotes omitted). At the pleading stage, the claimant must present “allegations plausibly suggesting (not merely consistent with) an entitlement to relief . . .’’ Id., quoting Bell Atl. Corp., 127 S.Ct. at 1966 (internal quotes omitted).
Public Defendants
A. Alexander cannot maintain her G.L.c. 214, §1B and c. 6 claims against Marshall, Clarke, and Groblewski for monetary damages but can maintain the claims to the extent she seeks injunctive relief.
Under G.L.c. 258, §2, public employees are immune from liability for negligent or wrongful acts committed within the scope of their office or employment. See Schenker v. Binns, 18 Mass.App.Ct. 404, 404 (1984) (observing that structure of G.L.c. 258 imposes liability on public employer for public employee’s negligent act performed within scope of his employment but relieves public employees from liability); Parker v. Chief Justice, 67 Mass.App.Ct. 174, 180 (2006) (“where only ordinary negligence is alleged, claims may not be asserted against the public employee but may be brought against the employer"). This immunity, however, does not prevent a plaintiff from suing supervisory officials for injunctive relief. See Lane v. Commonwealth, 401 Mass. 549, 553 (1988).
Here, nothing in the complaint suggests that Marshall, Clarke, or Groblewski were acting outside the scope of their employment when they committed the alleged negligent conduct. Consequently, they cannot be sued under G.L.c. 214 and 6 for damages.[8] However, because they are supervisory officials, these claims can be maintained against them to the extent Alexander seeks injunctive relief.
B. Alexander can maintain her 42 U.S.C. §1983 claim against Marshall, Clarke, and Groblewski.[9]
To state a claim under 42 U.S.C. §1983, a plaintiff must allege: (1) a violation of a right protected by the United States Constitution or laws of the United States; and (2) that the perpetrator of the violation was acting under the color of law. Gutierrez v. Massachusetts Bay Transp. Auth., 437 Mass. 396, 401 (2002). The statute itself is not a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes. Baker v. McColland, 443 U.S. 137, 145 n.3 (1979).
Marshall, Clarke, and Groblewski argue that Alexander has failed to identify which of her constitutional rights they violated. They claim that her complaint only establishes their alleged violation of her right to privacy under state statutes. See Baker v. Gray, 57 Mass.App.Ct. 618, 624 (2003) (observing that §1983 does not protect against the violation of state statutes unless the statutory violation is also a violation of a federal right). This, however, does not appear to be the case. It seems that Alexander is also alleging that these defendants’ actions violated a federal constitutional right of privacy.
It has longed been recognized that individuals have a constitutionally derived right of privacy, which protects an “interest in avoiding disclosure of personal matters.” Whalen v. Roe, 429 U.S. 589, 599 (1977); see also Griswold v. Connecticut, 381 U.S. 479, 485 (1965). A majority of the federal circuit courts of appeals have concluded that this interest is implicated by the unauthorized disclosure of medical information or records. E.g., Herring v. Keenan, 218 F.3d 1171, 1175 (10th Cir. 2000); Doe v. Southeastern Penn. Transp. Auth., 72 F.3d 1133, 1137 (3d Cir. 1995); Anderson v. Romero, 72 F.3d 518, 522 (7th Cir. 1995); Doe v. New York, 15 F.3d 264, 267 (2d Cir. 1994); Doe v. Attorney Gen. of the U.S., 941 F.2d 780, 795-96 (9th Cir. 1991), vacated on other grounds sub nom Reno v. Doe, 518 U.S. 1014 (1996); but see American Fed’n of Gov’t Emps. v. HUD, 118 F.3d 786, 791-93 (D.C.Cir. 1997) (questioning existence of constitutional right to confidentiality); Jarvis v. Wellman, 52 F.3d 125, 126 (6th Cir. 1995) (indicating that right of privacy does not apply to medical records).[10]
Of the circuit courts acknowledging a right to privacy in one’s medical information, only the Second and Third Circuit have definitively concluded that the protection also exists for prisoners, albeit subject to the state’s legitimate penological interests. Doe v. Delie, 257 F.3d 309, 311 (3d Cir. 2001); Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999); see also Moore v. Prevo, 379 Fed.Appx. 425, 427-28 (6th Cir. 2010) (distinguishing between disclosures of sensitive medical information to prison officials, which cannot implicate an inmate’s right to privacy, and disclosures to other inmates, which can implicate the right); Anderson, 72 F.3d at 522-23 (expressing doubt over whether a prisoner could bring such a claim under the Fourth Amendment’s right to privacy, but suggesting that the Eighth Amendment’s cruel and unusual punishment clause might give rise to such a claim); Harris v. Thigpen, 941 F.2d 1495, 1513 (11th Cir. 1991) (assuming arguendo that prisoners “enjoy some significant constitutionally-protected privacy interest in preventing the non-consensual disclosure of their HIV-positive diagnoses to other inmates . . .”).
The First Circuit has yet to address whether individuals, let alone prisoners, have privacy rights in connection with the disclosure of medical information. In Borucki v. Ryan, the court declined to decide whether a constitutional right to privacy regarding medical records exists. 827 F.2d 836, 840-49 (1st Cir. 1987). Massachusetts appellate courts have similarly *293 remained silent on the subject. Nevertheless, some Massachusetts federal district court decisions have recognized the existence of a right to privacy in one’s medical information. See Doe v. Town of Plymouth 825 F.Sup. 1102, 1107 (D.Mass. 1993) (concluding that the right to privacy includes the right to the nondisclosure of one’s HIV status); Marchand v. Town of Hamilton, 2009 U.S.Dist. LEXIS 92934 at *22-23 (D.Mass. 2009) (holding plaintiff had “a constitutional right to privacy in the non-disclosure of confidential mental health information allegedly disclosed for no legitimate public purpose”).
Only one Massachusetts decision has dealt with prisoners’ right to privacy. In Klein v. MHM Corr. Servs., Inc., a federal district court judge assumed prisoners enjoy a constitutional right of privacy with respect to medical information but nonetheless dismissed a prisoner’s §1983 claim because the medical information disclosed was not “intensely personal” and therefore could not be considered a constitutional violation. 2010 U.S.Dist. LEXIS 83818 at *14-15 (D.Mass. 2010).
Developments since the Borucki decision suggests that a constitutional right to privacy in the non-disclosure of confidential medical information does exist. See Herring, 218 F.3d at 1175; Southeastern Penn. Transp. Auth., 72 F.3d at 1137; Anderson, 72 F.3d at 522; New York, 15 F.3d at 267; Attorney Gen. of the U.S., 941 F.2d at 795-96; see also Town of Plymouth, 825 F.Sup. at 1107; Marchand, 2009 U.S.Dist. LEXIS 92934 at *22-23.
Moreover, it would appear that the right, although subject to legitimate penological interests, extends to prisoners. See Delie, 257 F.3d at 311; Powell, 175 F.3d at 112. “(I]mprisonment carries with it the circumscription or loss of many significant rights.” Hudson v. Palmer, 468 U.S. 517, 524 (1984). However, prisoners “do not forfeit all constitutional protections by reason of their conviction and confinement in prison.” Bell v. Wolfish, 441 U.S. 520, 545 (1979). “Inmates in jails, prisons, or mental institutions retain certain fundamental rights of privacy!.]” Houchins v. KQED, Inc., 438 U.S. 1, 5 n.2 (1978).
Here, Alexander sufficiently alleges that her right to privacy was violated. The information disclosed was personal in nature, there was apparently no countervailing penological reason for the disclosure, and the disclosure was made to another inmate rather than to prison employees. See Powell, 175 F.3d at 112; Moore, 379 Fed.Appx. at 427-28.
There is certainly a question as to whether the information disclosed is sufficiently sensitive to implicate Alexander’s constitutional protections. Compare Delie, 257 F.3d at 311 (prisoner’s right to privacy infringed by disclosure of information regarding HIV status); Powell, 175 F.3d at 112 (transsexual, HIV-positive prisoner’s right to privacy was violated by disclosure of medical information), with Klein, 2010 U.S.Dist. LEXIS 83818 at *14-15 (disclosure of report did not violate right to privacy because it did not contain information relating to therapeutic treatment, but rather information obtained during an institutional safety assessment). However, the resolution of that issue depends on the overall context of the disclosure not merely the particular item of information disclosed. The record currently does not contain enough information to provide such context.[11]
II. Private Defendants
A. Alexander has alleged sufficient facts to maintain her G.L.c. 214, §1B claim against Bellow and Kidder.
In order to establish a prima facie case under G.L.c. 214, §1B, a plaintiff must allege: (1) that the defendant unreasonably, substantially and seriously interfered with her right to privacy by disclosing facts of a highly personal or intimate nature; and (2) that the defendant had no legitimate reason for doing so. Martinez v. New England Med. Ctr. Hosps., Inc., 307 F.Sup.2d 257, 267 (D.Mass. 2004); see also Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517-19 (1991).[12] In analyzing the severity and substantiality of a disclosure, courts have looked at the degree of intrusion into a plaintiffs privacy. See Cort v. Bristol-Meyers Co., 385 Mass. 300, 308 (1982).
Bellow and Kidder argue that Alexander’s claim must fail because the disclosure was neither substantial nor serious.[13] This, however, is arguably not the case. “[T]he success of such a cause of action is not dependent on communication of the personal matters disclosed to the public at large.” Tower v. Hirschhorn, 397 Mass. 581, 586 (1986). Even though here the release of information was not extensive and may have been done without malice, ongoing or malicious acts are not required to violate G.L.c. 214, §1B. See Tower, 397 Mass. at 586-87 (“disclosure without the consent of the patient, of confidential medical information to two individuals, as alleged by the plaintiff, would be sufficient to warrant a finding of invasion of privacy”).
Furthermore, the subject of hair loss, for both men and women, is a personal and sensitive topic. For Alexander, the subject is likely even more sensitive given her asserted GID. The disclosure at issue here would appear to be the type of personal and intimate information contemplated by G.L.c. 214, §1B. See Tower, 397 Mass. at 586-87; Bratt v. International Bus. Machs. Corp., 392 Mass. 508, 522 (1985) (recognizing “a patient’s valid interest in preserving the confidentiality of medical facts relayed to a physician”).[14]
B. Alexander can maintain her G.L.c. 6 claim against Bellow and Kidder.
General Laws c. 6, §177 states that “(a]ny aggrieved person may institute a civil action in superior court for damages or to restrain any violation of sections one hundred and sixty-eight to one hundred and seventy-five, inclusive.” Bellow and Kidder argue that *294 Alexander’s G.L.c. 6 claim must be dismissed because her inmate identification number is not protected criminal offender record information (“CORI”).
General Laws c. 6, §167 defines CORI as: “records and data in any communicable form compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release.” (Emphasis added.) An inmate’s commitment number is established when he or she is committed to a prison. Therefore, an inmate’s commitment number would seem to be protected CORI material because it is information compiled by a criminal justice agency that relates to her incarceration. See Kordis v. Superintendent, Souza Baranowski Corr. Ctr., 58 Mass.App.Ct. 902, 903 (2003) (assuming without deciding that pursuant to the definition of CORI, an inmate account statement may be said to relate to incarceration because the account would not exist but for the petitioner’s status as a prisoner).
Nonetheless, such a conclusion runs contrary to the thrust of the CORI statute. The purpose of the statute is to protect the privacy and the security of individuals with a criminal record. New Bedford Standard-Times Publ. Co. v. Clerk of the Third Dist. Court of Bristol, 377 Mass. 404, 413-14 (1979). It is concerned with protecting substantive information regarding the offender. See Kordis, 58 Mass.App.Ct. at 903 (noting that the purpose of the CORI statute is in part, to protect the offender’s rehabilitation by shielding from public view his prior convictions as well as records that aggregate information concerning his criminal histoiy). An identification number reveals no personal information regarding the inmate. Thus, it appears that the identification number is not CORI.[15]
Such a conclusion, however, does not mean that Alexander’s claim should be dismissed. Significantly, Kidder and Bellow’s argument fails to take into account the full extent of Alexander’s claim. She appears to allege that both the identification number and her medical information are protected CORI. Support for the proposition that medical information is CORI is found in the statute. General Laws c. 6, §172, prohibits the disclosure of “information .. . that identifies ... medical or psychological histoiy.”
C. Alexander cannot maintain her G.L.c. 258 claim against Bellow and Kidder.
In Count III of her complaint, Alexander alleges that each defendant, including Bellow and Kidder, have violated her “rights as secured by c. 258, §4.” However, G.L.c. 258 is only applicable to lawsuits against public employees and employers as defined by §1 of the statute. See G.L.c. 258, §§2-9. Bellow and Kidder argue that G.L.c. 258 does not apply to them because they are private employees of a private law firm.[16] They appear to be correct. They are likely best characterized as employees of an independent contractor. Cf. Nestlenook, Inc. v. Atlantic Design Eng’rs, 17 Mass. L. Rptr. 25, 2-3 (Mass. Super. 2003) (holding that an engineering service company that performed services for town was an independent contractor).
D. Alexander cannot maintain her 42 U.S.C. §1983 claim against Bellow and Kidder.
As discussed above to recover under § 1983 a plaintiff must prove that a defendant was acting under color of law. Gutierrez, 437 Mass. at 401. It is evident, however, that Kidder and Bellow did not engage in state action. Although their alleged wrongful acts occurred in the course of their representation of UMCH, their association with the hospital alone is insufficient to establish that they are state actors for the purposes of a §1983 action. See Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982) (indicating that a private contractor’s mere performance of services for the government does not create the type of symbiotic relationship with the state which would warrant liability under §1983).
ORDER
For the foregoing reasons:
Clarke, Marshall, and Groblewski’s motions to dismiss Counts I, II, and III are ALLOWED to the extent Alexander is suing them for monetary damages but DENIED to the extent she is suing them for injunctive relief. Their motions to dismiss Count IV are DENIED.
Bellow and Kidder’s motion to dismiss is ALLOWED as to Counts III and IV and DENIED as to Counts I and II.

After review of all materials submitted, the court finds, pursuant to Superior Court Rule 9A(b)(2), that a hearing would not assist the Court in evaluating the motions. Accordingly, the court has decided the motions on the papers.

Alexander is a prisoner confined at MCI-Norfolk.

The foregoing is taken from a document not attached to the complaint. Alexander, however, had notice of and relied upon the document in framing her complaint. On a Mass.R.Civ.P. 12(b)(6) motion the court may take such documents into consideration. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004).

Alexander claims she suffers from Gender Identity Disorder (“GID”). She appears to suggest that the request for the hair loss medication was related to this condition.

he Program Medical Director of UMCH.

The Commissioner of the DOC.

The public employers of these individuals (i.e. the DOC and UMCH) can be held liable for their actions, subject to the exceptions detailed in G.L.c. 258. See Schenker, 18 Mass.App.Ct. at 404; Parker, 67 Mass.App.Ct. at 180. Alexander is currently seeking to amend her complaint, specifically adding the DOC as a defendant. She may wish to seek further leave to amend to add UMCH or the Commonwealth as a defendant. See Pruner v. Clerk of Superior Court, 382 Mass. 209, 309, 314 (1981) (noting that Norfolk County, as the employer of the defendant county court clerk and assistant clerk, should have been named as a defendant).

Alexander is suing Marshall, Clarke, and Groblewski in their individual and official capacities for injunctive relief and monetary damages. To the extent she is suing these defendants in their official capacity she cannot recover monetary damages against them. While a plaintiff can sue a state agency or state official for injunctive relief under §1983, she cannot utilize the statute to sue them for damages. See Johnson v. Rodriquez, 943 F.2d 104, 108 (1st Cir. 1991) (“It is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action”); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10 (1989) (holding that neither a State nor its officials acting in their official capacities are persons under §1983 but noting that “(o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983”).

The Jarvis decision and other similar Sixth Circuit decisions have been called into doubt by Moore v. Prevo, 379 Fed.Appx. 425, 427-28 (6th Cir. 2010), which apparently concluded that such a right does exist.

In the alternative, Marshall, Clarke, and Groblewski argue that they are entitled to qualified immunity. However, there is insufficient information in the record to decide the issue at this time.

Alexander’s complaint appears to allege that the Defendants, including Bellow and Kidder, violated G.L.c. 214, §1B as a result of their negligence. It is unclear whether § IB allows a plaintiff to recover for a negligent violation given that the statute is more or less rooted in the common-law intentional tort of invasion of privacy. See Zereski v. American Postal Workers Union, WOCV1998-971567, Slip Op. at 9 (Mass.Super. August 14, 1998) (Fecteau, J.) [9 Mass. L. Rptr. 55]. No Massachusetts appellate court has apparently ruled on the issue. Nevertheless, the language of the statute would appear to encompass a negligent disclosure of personal information because such disclosure could arguably be unreasonable, substantial, and seriously interfere with a plaintiffs right to privacy.

Bellow and Kidder do not claim they had a legitimate reason for releasing information regarding Alexander.

The right to privacy under G.L.c. 214, §1B can be surrendered by public display. Broderick v. Police Comm’r of Boston, 368 Mass. 33, 44 (1975). Bellow and Kidder allege that the information disclosed is not protected as Alexander put the information in the public domain when she filed her complaint in Alexander v. University of Mass. Med Sch. (USDC CA No. 09-10776). The complaint details her hair loss problem. However, the Defendants cite to no case where the filing of a lawsuit constituted the kind of public display envisioned by Broderick. But see Tower, 397 Mass. at 589 n.9 (suggesting, but not resolving, possibility that plaintiff, by commencing tort action, may have waived a statutory right to privacy as to medical records). Moreover, it appears that Alexander’s U.S. District Court lawsuit was filed following the release of her information to Blanco and, therefore, after it was made public.

That the identification number is not CORI is also supported by the fact that anyone can obtain the prisoner’s commitment number through the Executive Office of Public Safety and Security’s website.

In her brief opposing their motion to dismiss, Alexander does not contend otherwise.